## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZEN ELECTRONICS COMPANY, LTD.** )<br><br>)<br><br>**Plaintiff,** )<br>**v.** )<br><br>)<br>**OSRAM GMBH** )<br><br>)<br>**and** )<br><br>)<br>**OSRAM OPTO SEMICONDUCTORS GMBH** )<br><br>)<br>**Defendants.** )<br><br>)<br><br>) | **Case Number  1:05CV01560 (ESH)** |

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
### DEFENDANTS' MOTION TO DISMISS

.

Dated: November 10, 2005             OBLON, SPIVAK, McCLELLAND,
                                           MAIER & NEUSTADT, P.C
                                 1940 Duke Street
                                 Alexandria, VA 22314
                                 (703) 413-3000

                                 Attorneys for Plaintiff

                                 CITIZEN ELECTRONICS COMPANY, LTD.

**Table of Contents**

I.    INTRODUCTION AND SUMMARY ........................................................................ 2

II.   STATEMENT OF FACTS ..................................................................................... 5

III.  ARGUMENT ..................................................................................................... 9

   A.   Legal Standards.............................................................................................. 9

      1.   Federal Rule Civil Procedure 12(b)(1) ............................................... 9

      2.   The Declaratory Judgment Act ........................................................ 10

      3.   Dismissal for Lack of Subject Matter Jurisdiction and *Res Judicata* ............... 12

   B.   Analysis........................................................................................................ 14

      1.   CE had a Reasonable Apprehension at the Time the Present Complaint was
           Filed and at the Time the Complaint was Amended.................................. 14

      2.   CE was Engaged in the Accused Activity when the Suit was Filed and
           Amended ................................................................................ 18

      3.   This Action Should Not be Dismissed................................................. 18

      4.   Issue Preclusion Does Not Apply ...................................................... 20

      5.   Filing of the Amended Complaint Further Moots the Preclusion Issue ........... 23

IV.   CONCLUSION ................................................................................................. 24

# Table of Authorities

## Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)........................................................... 8

*Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 662 F. Supp. 603 (D. Del. 1987)........... 13

****\*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988) ........................................................................................................................... passim

*Bayer AG v. Biovail Corp.,* 279 F.3d 1340 (Fed. Cir. 2002) ........................................... 10

*Citizen Electronics Co., Ltd. v. OSRAM GmbH*, 377 F. Supp. 2d 149 (D.D.C. 2005).. 5, 7, 8, 16

*Cordis Corp. v. Medtronic Inc.*, 835 F.2d 859 (Fed. Cir. 1987)........................................ 9

*Costello v. United States*, 365 U.S. 265 (1961) ................................................................ 17

*Dana v E. S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003) ......................................... 11

*Dozier v. Ford Motor Co.*, 702 F. 2d 1189 (D.C. Cir. 1983)..................................... 11, 17

*EMC Corp. v. Norand*, 89 F.3d 807, 813 (Fed. Cir. 1996)............................................... 10

*Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387 (D. Del. 1989).............................. 10, 15

*Ethicon, Inc. v. American Cyanmid Co.*, 369 F. Supp. 934 (D. Del. 1973)............ 9, 12, 19

*GAF Corp. v. United States*, 818 F.2d 901 (D.C. Cir. 1987)..................................... 11, 17

*Indium Corp. of Am. v. Semi-Alloys, Inc.,* 781 F.2d 879 (Fed. Cir. 1985)................... 9, 16

*Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243 (D.C. Cir. 1999) ........ 11

*Magnus Electronics v. La Republica Argentina*, 830 F.2d 1396 (7th Cir. 1987) .............. 18

*Martin v. Dep't of Mental Hygiene*, 588 F.2d 371 (2d Cir. 1978).................................... 17

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ...................... 8, 9

*Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366 (Fed. Cir. 2003) ........ 11

*Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75 (1984)............................. 10

*Millipore Corp. v. University Patents Inc.*, 682 F. Supp. 227 (D. Del. 1987)................. 19

*Montana v. United States*, 440 U.S. 147 (1979) ......................................................... 12, 17

*Napper v. Anderson* 500 F.2d 643 (5th Cir. 1974) .......................................................... 17

*Parkland Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ...................................................... 10

*Prakash v. American University*, 727 F.2d 1174 (D.C. Cir. 1984).................................. 11

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992)................................... 12, 13

*Tyler Gas Services Co. v. Federal Power Commission*, 247 F.2d 590 (D.C. Cir. 1957) . 11

*Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002) ....................... 12

*Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305 (Fed. Cir. 1982) ....................................................................................................................................... 11

## Statutes

28 U.S.C. § 2201 (a) ...................................................................................................... 2, 8

## Treatises

18 MOORE'S FEDERAL PRACTICE § 132.02[2][e]. ............................................................ 12

Borchard, DECLARATORY JUDGMENTS, 2d ed. 1941 ....................................................... 10

1

## I.    INTRODUCTION AND SUMMARY

On August 2, 2005, Citizen Electronics Company, Ltd. ("CE") filed this action seeking a declaratory judgment that its white light emitting diodes ("white LEDs") do not infringe upon the patents-in-suit owned and/or assigned to Osram GMBH and Osram Opto Semiconductor GMBH (collectively "OSRAM") and/or that the patents-in-suit are invalid.  Complaint, D.I. 1, ¶4.  The "patents-in-suit" are:  U.S. Pat. Nos. 6,066,861; 6,245,259; 6,277,301; 6,592,780; and 6,613,247 (the **particle size patents**"); and U.S. Pat. Nos. 6,576,930 ("**the conversion patent**").  *Id.*  On November, 10, 2005, CE filed an Amended Complaint adding facts regarding OSRAM's service of a German complaint of patent infringement on September 28, 2005.

Declaratory judgment jurisdiction under 28 U.S.C. § 2201(a) exists when an examination of the totality of the circumstances reveals that an actual controversy exists between the parties.  Thus, in determining whether an actual controversy existed between CE and OSRAM as of the filing date of the amended declaratory judgment complaint on November 10, 2005 (or even on August 2, 2005, the filing date of the second declaratory judgment action), this Court must consider the following:

1.    On January 18, 2005, CE filed Civil Action No. 05-CV-00112 before the U.S. District Court for the District of Columbia, requesting declaratory judgment against OSRAM and requesting a finding of non-infringement and/or invalidity of the patents in suit.  Complaint, D.I. 1, ¶21.

2.    After the filing of Civil Action No. 05-CV-00112, OSRAM filed a patent infringement action in Germany against CE and its CE's German distributor.  Am. Complaint, ¶23.

3.     Shortly after filing its German infringement action, OSRAM met directly with CE's German LED distributor.  This distributor informed CE shortly after meeting with OSRAM, that the distributor would cease promoting and selling all CE white LEDs. Am. Complaint, ¶27; Gasser Decln. Ex. 1.[1]

4.     On May 2, 2005, OSRAM released a report "FOR THE TRADE PRESS" on its OSRAM Opto Semiconductors GmbH website, entitled, "Osram to protect patents: Osram Opto Semiconductors files action for patent infringement against Citizen," and further stating:

> Based on its conviction that Citizen is infringing fundamental patent rights, Osram Opto Semiconductors has filed action against the Japanese LED manufacturer Citizen Electronics Co., LTD. at Dusseldorf Regional Court. With this move, Osram intends to enforce its patents for the manufacture of Light Emitting Diodes (LEDs).
>
> In its suit, ***OSRAM stresses that CE has infringed and is still infringing its patents by importing, selling and offering certain white Light Emitting Diodes (LED) in Germany***….Action was similarly taken against a distributor, which has since declared that it will refrain from distributing Citizen products which infringe Osram's patents in [sic] future.

Complaint, D.I. 1, ¶23, Ex. J; Am. Complaint ¶28, Ex. T (emphasis added).

5.     OSRAM's May 2, 2005 press release also mentions the OSRAM ITC proceeding filed on or around May 6, 2004, which now is pending against one remaining company named Dominant Semiconductors.  The May 2, 2005 press release quotes OSRAM's CEO as saying: "Our objective in taking legal action against Citizen and issuing warnings to Dominant is to prevent unauthorized use of our technology." Complaint, D.I. 1, ¶24, Ex. J; Am. Complaint ¶29, Ex. T.

---

[1]  All exhibits included within this opposition paper are attached as indicated either to the Complaint, First Amended Complaint, or Declaration of Alexander E. Gasser in support of Citizen's Opposition Motion (hereinafter "Gasser Decl."), filed concurrently with this opposition.  Numbered exhibits are attached to the Gasser Decl., while lettered exhibits are attached to the Complaint and First Amended Complaint.

6.      On July 14, 2005, the Court dismissed Civil Action No. 05-CV-00112 for lack of subject matter jurisdiction.  In dismissing that case, the Court accepted OSRAM's argument that OSRAM's German patent infringement action against CE was not relevant to the jurisdictional issues because it occurred after suit was filed.  Complaint, D.I. 1, ¶25  Although the Court's July 14, 2005 dismissal of Civil Action No. 05-CV-00112 was initially "with prejudice," the Court on July 29, 2005, amended its July 14, 2005 Order to dismiss the action "without prejudice."  Complaint, D.I. 1, ¶26

7.      The unamended second complaint was not filed until August 2, 2005, due to the pendency of CE's earlier filed Civil Action No. 05-CV-00112 and the pendency of CE's motion to amend the July 14, 2005 judgment in that action, which the Court granted on July 29, 2005.  Complaint, D.I. 1, ¶¶26, 27

8.      OSRAM continued to prosecute its lawsuit in Germany even after the dismissal of Civil Action No. 05-CV-0112.  OSRAM was in the process of serving the German complaint upon CE through the Hague Convention at the time the original second declaratory judgment action was filed.  OSRAM completed such service on September 28, 2005.  Am. Complaint ¶32, Ex. U.

9.      Concurrent with the filing of this opposition, CE has filed an Amended Complaint under Fed. R. Civ. P. 15(a) including additional information concerning OSRAM's German complaint being formally served upon CE on September 28, 2005.  Am. Complaint ¶32, Ex. U.

The unchallengeable facts demonstrate that as of the filing of the August 2, 2005 Complaint and the presently filed Amended Complaint, there was an actual controversy between CE and OSRAM concerning infringement of the patents-in-suit.  This Court

4

clearly has subject matter jurisdiction over this declaratory judgment action.  CE

respectfully requests that the Court deny OSRAM's motion to dismiss.

## II.    STATEMENT OF FACTS

The patents-in-suit relate to devices that can produce white light using the

combination of:  (1) a semiconductor light source, sometimes referred to as a light

emitting diode or LED, and (2) a luminescent material, more commonly referred to as a

phosphor.  With such devices, the LED is surrounded by a resin, and the phosphor is

suspended in the resin.  The LED produces light of one color that is emitted from the

device.  In addition, the LED excites the phosphor so that light of a different color is also

produced.  The different colors of light (the color from the LED and the color from the

phosphor) combine to form "polychromatic" or white light, and therefore, this type of

device is commonly referred to as a "white LED."  CE is a company headquartered in

Japan that imports white LEDs into the United States and that offers for sale and sells

white LEDs in the United States.  Am. Complaint, ¶¶ 1, 14.

An actual controversy existed as of August 2, 2005, in that CE had a reasonable

apprehension that OSRAM would enforce its "particle size" and "conversion" patents

against CE, and CE sold and was offering to sell white LEDs that OSRAM charged were

covered by its patents.  CE therefore filed its Complaint seeking a declaratory judgment

of non-infringement and/or invalidity of the patents-in-suit.  The actual controversy

continued to exist as of the filing of the Amended Complaint on November 10, 2005.

The history of the interaction between CE and OSRAM concerning the white

LED patents dates back to January 28, 2003.  The Court discussed this history in its

opinion in the previous case Civil Action No. 05-CV-0112 that is reported at *Citizen*

*Electronics Co., Ltd. v. OSRAM GmbH*, 377 F. Supp. 2d 149 (D.D.C. 2005) and will not be repeated here. The Court determined that the interactions between CE and OSRAM in 2003 and 2004 could have created a reasonable apprehension of suit. *Citizen*, 377 F. Supp. 2d at 155-156. However, the Court determined that the activities did not create a reasonable apprehension of imminent suit as of the filing date of the first declaratory judgment action, January 18, 2005. *Id.* at 156.

After the filing of the complaint in Civil Action No. 05-CV-0112 case on January 18, 2005, CE's apprehension of imminent suit came to fruition. There are several actions by OSRAM demonstrating that, as of the filing of this Complaint on August 2, 2005 and the Amended Complaint on November 10, 2005, CE had a reasonable apprehension of imminent litigation if it continued to sell white LEDs in the United States.

After CE had filed the first declaratory judgment action on January 18, 2005, OSRAM filed a patent infringement action against CE and CE's distributor in Germany on March 14, 2005. Am. Complaint ¶23, Exs. J, K. OSRAM admitted to the filing of this suit in its Memorandum in support of its Motion to Dismiss the first declaratory judgment action on April 28, 2005. Civil Action No. 05-CV-0112, Docket No. 8, p. 28. Nearly immediately after filing its German infringement action, OSRAM met directly with CE's German LED distributor. This distributor informed CE shortly after meeting with OSRAM, that the distributor would cease promoting and selling all CE white LEDs. Am. Complaint ¶27; Gasser Decl. Ex. 1. After CE's first declaratory judgment action was dismissed, CE was formally served with OSRAM's German complaint through the Hague Convention on September 28, 2005. Am. Complaint ¶32, Ex. U.

On May 2, 2005, OSRAM released a communication "FOR THE TRADE PRESS" on its OSRAM Opto Semiconductors GmbH's website, entitled, "Osram to protect patents: Osram Opto Semiconductors files action for patent infringement against Citizen," and further stating:

> Based on its conviction that Citizen is infringing fundamental patent rights, Osram Opto Semiconductors has filed action against the Japanese LED manufacturer Citizen Electronics Co., LTD. at Dusseldorf Regional Court. With this move, Osram intends to enforce its patents for the manufacture of Light Emitting Diodes (LEDs).

> In its suit, OSRAM stresses that CE has infringed and is still infringing its patents by importing, selling and offering certain white Light Emitting Diodes (LED) in Germany....Action was similarly taken against a distributor, which has since declared that it will refrain from distributing Citizen products which infringe Osram's patents in [sic.] future.

> Complaint, Ex. J; Am. Complaint, Ex. T.

OSRAM's May 2, 2005 press release also cites OSRAM's ITC proceeding filed on or around May 6, 2004, which now is pending against one remaining company named Dominant Semiconductors.   The May 2, 2005 press release quotes OSRAM's CEO confirming Osram's intention to pursue legal action against CE, as it did against Dominant: "Our objective in taking legal action against Citizen and issuing warnings to Dominant is to prevent unauthorized use of our technology."  *Id.*

On July 14, 2005, the Court dismissed Civil Action No. 05-CV-00112 for lack of subject matter jurisdiction.   The Court determined that the interactions between CE and OSRAM in 2003 and 2004 could have created a reasonable apprehension of suit, *Citizen*, 377 F. Supp. 2d at 155-156, but these activities did not create a reasonable apprehension of imminent suit as of the January 18, 2005, filing date of the first declaratory judgment action.  In dismissing that case, the Court accepted OSRAM's argument that the German

7

action filed by OSRAM against CE was not relevant to the jurisdictional issues because it occurred _after_ suit was filed.  _Citizen_, 377 F. Supp. 2d at 155 n. 6.  Although the Court's July 14, 2005 dismissal of Civil Action No. 05-CV-00112 was "with prejudice," the Court on July 29, 2005, amended its July 14, 2005 Order to dismiss the action "without prejudice."  Complaint, D.I. 1, ¶26, Am. Complaint ¶31.

CE's complaint dated August 2, 2005, was not filed earlier due to the pendency of CE's previously filed Civil Action No. 05-CV-00112 and the pendency of CE's motion to amend the July 14, 2005 judgment in that action.  Complaint, D.I. 1, ¶27, Am. Complaint ¶33.

OSRAM continued to prosecute its lawsuit in Germany even after the Court's dismissal of Civil Action No. 05-CV-0112 in July 2005.  At the time of the dismissal, OSRAM was in the process of serving the German complaint through the Hague Convention upon CE, and OSRAM proceeded with completing such service on September 28, 2005.  Am. Complaint ¶32.  Indeed, as of the date of the submission of this paper and CE's First Amended Complaint, OSRAM has maintained its lawsuit against CE in Germany.  OSRAM never withdrew its German suit on the same counterpart patents as involved in the present suit, nor did OSRAM ever retract its press release or the quote of its CEO confirming OSRAM's intention to pursue legal action against CE, as it did against Dominant before the U.S. International Trade Commission.

The U.S. patents at issue in the present suit are U.S. counterparts of patents upon which Osram brought suit against CE, with all the patents originating from the same German applications.  Am. Complaint ¶25; Gasser Decl. Exs. 2, 3.  Furthermore, claims

8

within the patent documents asserted by OSRAM in its German complaint against CE are similar to the claims within the instant patents in suit.  Am. Complaint ¶26

CE has filed concurrently with this opposition a First Amended Complaint that includes facts regarding the service of OSRAM's German complaint upon CE that was completed on September 28, 2005.[2]  Am. Complaint ¶32.

Based upon the totality of the circumstances enumerated above, CE had a reasonable apprehension that if it continued its commercial activities with respect to white LEDs in the United States, OSRAM would sue CE for patent infringement. Consequently, on August 2, 2005, CE filed this Complaint and the Amended Complaint on November 10, 2005.

## III.    ARGUMENT

### A.  Legal Standards

#### 1.  Federal Rule Civil Procedure 12(b)(1)

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the declaratory judgment plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence.  In reviewing such a motion, the Court must accept as true all the factual allegations contained in the Complaint and draw all reasonable inferences in the plaintiff's favor.  *Citizen*, 377 F. Supp. 2d at 152.

---

[2]  *Confederate Memorial Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("As a motion to dismiss is not ordinarily considered a 'responsive pleading'... under Rule 15(a), appellants could have amended their complaint as of right prior to the court's decision on the motions.").

## 2.  The Declaratory Judgment Act

The Declaratory Judgment Act permits a party to file suit in federal court to obtain a declaration of rights with respect to another party, whether or not other relief (such as damages or an injunction) is or could be sought.  28 U.S.C. § 2201(a). Declaratory judgment jurisdiction exists when there is an "actual controversy" between adverse parties, appropriate to immediate and definitive determination of their legal rights.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).  An actual controversy, which supports declaratory judgment jurisdiction, is "distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* at 240-41.  Because the difference between an abstract question and an actual controversy "is necessarily one of degree," the questions are to be answered by considering the totality of the circumstances.  *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941);  *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988).  The sole requirement for jurisdiction under the Act is that there be a true, "actual controversy."  *Arrowhead*, 846 F.2d at 735.

The Act is often used in patent controversies.  As applied to patent rights, there has evolved a pragmatic two-part test for determining the existence of an actual controversy:  (1) the patentee must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that the patent owner will enforce its rights if the plaintiff commences or continues the activity in question, and (2) the declaratory judgment complainant must have either engaged in the putatively infringing activity or undertaken concrete steps with the intent to conduct such activity.  *See e.g. Cordis Corp. v. Medtronic Inc.*, 835 F.2d 859, 862 (Fed. Cir. 1987).  The element of

threat or reasonable apprehension of suit turns on the conduct of the patentee, while the infringement element depends on the conduct of the asserted infringer. *Arrowhead*, 846 F.2d at 736. If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more. *Id.* The filing of a patent lawsuit in a foreign country against a company related to the declaratory judgment plaintiff based upon foreign patents that are equivalent to U.S. patent counterparts creates a reasonable apprehension of imminent suit in this country. *Ethicon, Inc. v. American Cyanmid Co.*, 369 F. Supp. 934 (D. Del. 1973) (finding reasonable apprehension of suit based upon patent lawsuit in the U.K. against plaintiff's sister corporation). The test is objective and is applied to the facts existing when the complaint is filed. *Indium Corp. of Am. v. Semi-Alloys, Inc.,* 781 F.2d 879, 883 (Fed. Cir. 1985).

Even when there is declaratory judgment jurisdiction, a district court's decision on whether to exercise that jurisdiction is discretionary. *Arrowhead*, 846 F.2d at 735 n.6. However, the district court does not have unfettered discretion. *EMC Corp. v. Norand*, 89 F.3d 807, 813 (Fed. Cir. 1996). Two criteria are generally used in determining whether a court should exercise its discretion to issue a declaratory judgment: (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations at issue; and (2) whether the judgment will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding. Borchard, DECLARATORY JUDGMENTS, 2d ed. 1941, 299; *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 392 (D. Del. 1989).

### 3.   Dismissal for Lack of Subject Matter Jurisdiction and *Res Judicata*

*Res judicata* is now used as a broad term covering two types of preclusive effects of judgments:  claim preclusion [formerly known as *res judicata*] and issue preclusion [formerly known as collateral estoppel].  *See, e.g. Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).  Claim preclusion generally prevents a party from suing on a claim, which has been previously litigated to a final judgment by the party or such party's privies, and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.  Issue preclusion generally prevents relitigation of issues actually litigated and necessary for the outcome of the prior suit, even if the current suit involves different claims.  *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).[3]

The Court granted OSRAM's motion to dismiss under Fed. R. Civ. P. 12(b)(1) without prejudice.  A dismissal for lack of subject matter jurisdiction is not a disposition on the merits and consequently does not have claim preclusive effect.  *Prakash v. American University*, 727 F.2d 1174, 1182 (D.C. Cir. 1984) (citing *Tyler Gas Services Co. v. Federal Power Commission*, 247 F.2d 590 (D.C. Cir. 1957)).  Such a dismissal, having no claim preclusive effect, does not affect subsequent attempts to bring suit in a

---

[3] The Federal Circuit has stated that "the law of the regional circuit applies to the issue of collateral estoppel [issue preclusion]." *Bayer AG v. Biovail Corp.,* 279 F.3d 1340, 1345 (Fed. Cir. 2002).  On issues of claim preclusion, the Federal Circuit has also stated that the law of the regional circuit controls. *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003).  However, Federal Circuit jurisprudence on whether to apply its own law to questions of claim and issue preclusion is "at best confusing." *Dana v. E. S. Originals, Inc.*, 342 F.3d 1320, 1327 (Fed. Cir. 2003) (Dyk, J. concurring).  The Federal Circuit has stated that it will be guided by the Restatement (Second) of Judgments. *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir. 1982).  Regardless of which circuit's law applies, the results would be similar under either Federal or D.C. Circuit law.

court of competent jurisdiction.  *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999).

The judgment ordering dismissal, may, however, have preclusive effect as to matters actually adjudicated; it will, for example, preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal, *i.e.* issue preclusion.  *GAF Corp. v. United States*, 818 F.2d 901, 913 (D.C. Cir. 1987).  A claim of jurisdiction is not precluded if, however, there are developments tending to "cure" the jurisdictional deficiency identified in the first suit.  *Id.* at 913.  This so-called "curable defect" exception applies "where a 'precondition requisite' to the court's proceeding with the original suit was not alleged or proven, ***and is supplied in the second suit***." *Id.* (emphasis added, citing *Dozier v. Ford Motor Co.*, 702 F. 2d 1189, 1192 (D.C. Cir. 1983)).

The basis of this rule, that issue preclusion applies only if the issue in the prior litigation is identical to the issue in the subsequent litigation, entails the corollary that a difference in pertinent facts, sufficient to substantially change the issue, renders the doctrine of issue preclusion inapplicable.  "[C]hanges in facts essential to the judgment will render collateral estoppel [issue preclusion] inapplicable in a subsequent action raising the same issues." *Montana v. United States*, 440 U.S. 147, 159 (1979).  Whether issue preclusion applies therefore depends in part on whether the controlling facts have changed significantly since the earlier judgment.  18 Moore's Federal Practice § 132.02[2][e] (3d ed.) at 132:27-28.

**B. Analysis**

### 1. CE had a Reasonable Apprehension at the Time the Present Complaint was Filed and at the Time the Complaint was Amended

To constitute an actual controversy, CE has the burden of establishing, by a preponderance of the evidence, that it had a reasonable apprehension that it will be sued if it continued to sell white LEDs in the United States. The test is an objective one. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887-88 (Fed. Cir. 1992). Although the best evidence of a reasonable apprehension of suit comes in the form of an express threat of litigation, an express threat is not required. *Vanguard Research, Inc. v. PEAT Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002).

Here, however, there is no doubt that there is "an express threat of litigation" – OSRAM filed a patent infringement suit in Germany on equivalent patents after the filing of Civil Action. No 05-CV-0112. *Arrowhead*, 846 F.2d at 736. There is no doubt of a "reasonable apprehension imminent of suit." *Ethicon*, 369 F. Supp at 937 ("The suit in Britain constitutes ample notice both to plaintiff and to those with whom plaintiff does business of an existing controversy, despite the fact that the British suit involves nominally a different company and a different patent."). CE filed the second declaratory judgment as soon as it was able – a mere three days after the Court modified its order of dismissal of the first declaratory judgment action to "without prejudice." CE filed an Amended Complaint on November 10, 2005 adding that CE has been now formally served with the German complaint.

14

OSRAM claims that it is a non-threatening patentee "provoked" into filing suit. Def's Mot. at 2-3, 7, 9, 11-12. The facts show otherwise.[4] The patents in the German suit are similar to their U.S. counterparts in this declaratory judgment action. Am. Complaint ¶¶24-26; Gasser Decl. Exs. 2,3. By suing in a foreign country on similar foreign patents, OSRAM took independent offensive action against CE unrelated to its actions in the first declaratory judgment action. This is not a case where the patentee/declaratory judgment defendant filed mandatory counterclaims of patent infringement in light of a declaratory judgment action *in that action*. *See, e.g., Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 662 F. Supp. 603, 617-20 (D. Del. 1987) (dismissing patent infringement counterclaim when the justiciable controversy no longer existed to support declaratory judgment jurisdiction). The dismissal of the first declaratory judgment action had no effect upon the vitality of the German suit. CE's declaratory judgment action is not even mentioned in the German complaint. Am. Complaint Exs. J, K. In addition, after filing its German infringement action, OSRAM met directly with CE's German LED distributor. Am. Complaint ¶27; Gasser Decl. Ex. 1. This distributor informed CE shortly after meeting with OSRAM, that the distributor had no choice but to cease promoting and selling all CE white LEDs. *Id.* Such tactics to shut down CE's German distributor can hardly be characterized as "non-threatening" or solely defensive. These aggressive actions by OSRAM, together with the filing of the German lawsuit provide additional bases for CE to have a reasonable apprehension of

---

[4] OSRAM's reliance on *Shell Oil Co. v. Amoco Corp.*, 970 F. 2d 885 (Fed. Cir. 1992) is misplaced. In *Shell*, Shell provoked Amoco during licensing negotiations to state that Amoco would enforce its patents. Shell based its apprehension of imminent suit upon Amoco's statement during those heated negotiations. *Shell*, 970 F.2d at 887. Amoco did not file an independent patent infringement action. OSRAM has. OSRAM is not the non-threatening patentee that Amoco was in the *Shell* case.

suit for selling white LEDs in the United States.  In fact, OSRAM continued to prosecute this independent, foreign patent infringement action even after the dismissal of CE's first suit.  Am. Complaint ¶28.

This court had already found that OSRAM's threats against CE in 2003 and 2004 regarding OSRAM's U.S. patents could have provided CE with a reasonable apprehension of suit.  *Citizen*, 377 F. Supp. 2d at 155-156; *see also* Complaint ¶¶ 14-20. Under *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), one must consider CE's reasonable apprehension within the totality of circumstances, which therefore includes all of OSRAM's actions in 2003 and 2004, <u>in addition to</u> its most recent actions.  Although OSRAM's German lawsuit against CE was not relevant to the first declaratory action, it is a changed circumstance and therefore immensely relevant to this present case.  Similarly, the facts that OSRAM continued to pursue its German litigation, served its complaint on CE, and broadcast to the world that CE infringes OSRAM's patents are all changed circumstances, and tremendously relevant to this action.  OSRAM provides no bona fide argument refuting the fact that CE clearly has a reasonable apprehension of suit.  Instead, OSRAM points to baseless or circular technical arguments.

CE's reasonable apprehension of imminent suit is bolstered by OSRAM's statements regarding its German litigation and its ITC action concerning the importation of white LEDs.  On May 2, 2005, OSRAM released a communication "FOR THE TRADE PRESS" on OSRAM Opto Semiconductors GmbH's website, entitled, "Osram to protect patents: Osram Opto Semiconductors files action for patent infringement against Citizen."  OSRAM stated:

16

*Based on its conviction that Citizen is infringing fundamental patent rights*, Osram Opto Semiconductors has filed action against the Japanese LED manufacturer Citizen Electronics Co., LTD. at Dusseldorf Regional Court. With this move, Osram intends to enforce its patents for the manufacture of Light Emitting Diodes (LEDs).

In its suit, Osram stresses that Citizen *has infringed and is still infringing its patents* by importing, selling and offering certain white Light Emitting Diodes (LED) in Germany.

Complaint, Ex. J; Am. Complaint Ex. T (emphasis added).

In the May 2, 2005 press release, OSRAM also cites OSRAM's ITC proceeding filed on or around May 6, 2004, which now is pending against one remaining company named Dominant Semiconductors. OSRAM's CEO is quoted as saying:

"Our objective in *taking legal action against Citizen* and issuing warnings to Dominant is *to prevent unauthorised use of our technology*," stated Dr. Rüdiger Müller, CEO of Osram Opto Semiconductors. *Id.* (emphasis added).

There is little doubt that CE had a reasonable apprehension of an imminent suit by OSRAM by the clear and unrebutted fact that OSRAM sued and continues to sue CE in Germany for patent infringement of OSRAM's patents directed toward white LEDs. OSRAM has made it perfectly clear that they believe CE is infringing their white LED patents. Since OSRAM "has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). OSRAM's CEO further confirmed that OSRAM has every intention "to take legal action against Citizen … to prevent unauthorized use of our technology." Complaint, Ex. J, Am. Complaint, Ex. T.

17

### 2. CE was Engaged in the Accused Activity when the Suit was Filed and Amended

For an actual patent controversy to exist for declaratory judgment jurisdiction purposes, the plaintiff must be engaged in making, selling, or using a product or an activity subject to an infringement charge or must have made meaningful preparation for such a product or an activity. CE stated in its Complaint that CE has imported, offered for sale, and sold white light emitting diodes (LEDs) in the United States, and CE continues to import, offer for sale, and sell white light emitting diodes in the United States." Complaint ¶ 14; Am. Complaint ¶ 14. OSRAM does not dispute this fact. This second requirement for declaratory judgment jurisdiction is therefore satisfied.

### 3. This Action Should Not be Dismissed

A judgment in this action is vital for clarifying and settling the legal dispute between CE and OSRAM. A judgment would also lift the cloud of "uncertainty, insecurity, and controversy" for CE, its customers, and/or distributors. *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 392 (D. Del. 1989). Indeed, the controversy has already caused one of CE's distributors to discontinue CE's white light LED products. Am. Complaint ¶27; Gasser Decl. Ex. 1. OSRAM has now specifically published in the trade press (and by extension to CE's present and potential future customers) that CE's white LEDs infringe OSRAM's patents. This is precisely the sort of Damoclean threat that a declaratory judgment action is meant to address. *Arrowhead*, 846 F.2d at 734-735. Accordingly, for these and all of the reasons mentioned in this paper, the Court should exercise its discretion and not dismiss this action.

18

OSRAM's characterization of the negotiations between CE and OSRAM is incorrect and not relevant. Without revealing the contents of the negotiations,[5] CE, through its counsel, approached OSRAM's counsel and proposed a framework of general terms from which to commence settlement negotiations. Gasser Decl. ¶7. OSRAM's response to CE's good faith overtures is evidenced by OSRAM's statement describing the negotiations as CE not "engag[ing] in any substantive licensing discussions." The primary reason behind the absence of any recent settlement discussions directly between the parties was OSRAM's refusal to even address the framework of general terms proposed by CE. Gasser Decl. ¶8. Accordingly, OSRAM's allegation that CE is using this lawsuit solely for gamesmanship is belied by the facts, and if anything, should be held against OSRAM, not CE.

OSRAM's unsupported allegations against CE regarding service of process are also incorrect and inappropriate. CE approached OSRAM first with an offer of giving OSRAM 60 days to file a response to CE's second declaratory judgment action in exchange of a waiver of formal service. See exhibit 3 to the Declaration of Charles Sanders. OSRAM rejected CE's reasonable offer and counteroffered by tying in the waiver of service of the German complaint by CE but without any corresponding extensions for CE to file a response. *Id*. CE could not agree. CE's original offer to provide OSRAM with a significant period of additional time to respond to the complaint hardly supports OSRAM's allegation that CE wanted only its U.S. litigation to proceed. Moreover, OSRAM is apparently complaining that its German lawsuit is not proceeding fast enough - - demonstrating the fallacy of its attempt to portray itself, for the purposes

---

[5] Fed. R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is likewise not admissible.").

of this motion, as a passive patent owner dragged unwillingly into the imbroglio. OSRAM's own actions demonstrate the existence and imminence of the present controversy, including, inter alia, OSRAM's filing and continuing to pursue the German lawsuit, OSRAM's causing CE's distributor to stop carrying CE's white light LED products, and OSRAM's press release to the world decrying CE as an infringer.

OSRAM's arguments concerning settlement discussions and extensions of time merely attempt to divert attention from the fact that CE clearly had a reasonable apprehension of imminent litigation at the time the present Complaint and First Amended Complaint were filed. OSRAM provides no bona fide factual refutation of CE's clear, reasonable apprehension. OSRAM's allegations are thus inappropriate, incorrect, and irrelevant to whether an actual case or controversy exists.

### 4.  Issue Preclusion Does Not Apply

CE filed the original declaratory judgment action on January 18, 2005. The Court's subject matter jurisdiction is determined by the facts and circumstances that were present at the time of the filing of the declaratory judgment action. *Indium*, 781 F.2d at 883. A determination of the Court's subject matter jurisdiction is a precondition requisite before the Court would adjudicate a declaratory judgment action. CE brought to the attention of the Court OSRAM's filing of the German lawsuit in its opposition to OSRAM's first motion to dismiss for lack of subject matter jurisdiction. The Court noted that the German lawsuit was irrelevant to its analysis of whether there was a reasonable apprehension of a lawsuit at the time the suit was filed. *Citizen*, 377 F. Supp. 2d at 155 n.7. Therefore, the facts of the German lawsuit were not included in the Court's determination of jurisdiction.

20

CE filed this declaratory judgment action on August 2, 2005, after OSRAM filed its German lawsuit and after OSRAM's subsequent press release made OSRAM's intentions to sue CE on its white LED patents known to the world. In addition, OSRAM's intention to continue the suit after the dismissal of the original declaratory judgment action is clearly a fact that occurred after dismissal of the first action. Indeed, OSRAM did not proceed with completing service of the German suit until <u>after</u> the dismissal of the first action. Therefore, these facts fall within the curable defect exception to the issue preclusive effects of a jurisdictional dismissal. *Montana*, 440 U.S. at 159; *GAF*, 818 F.2d at 913.

OSRAM's interpretation of the scope of the "curable defect" doctrine is overreaching and inappropriate. OSRAM claims that *Dozier* stands for the proposition that the "curable defect" exception only applies to activities that took place after the original lawsuit is dismissed. However, this does not make sense under the standards of determining jurisdiction of a declaratory judgment action. *Dozier* and the cases cited in the opinion do not address this circumstance.

For example, *Dozier* dealt with a failure to plead the requisite minimum damages for diversity jurisdiction. Plaintiff could not cure this deficiency because "the law regards the injury inflicted by a wrongful act as a past fact, complete at the time suit lies." *Dozier*, 702 F.2d at 1192 n. 5. Nothing more could be added to create the requisite amount of damages. Therefore, refiling at a later time would not cure the defect. The other cases cited in *Dozier* are instances where nothing more could be added to create

21

jurisdiction at the time of the filing of the suit.[6]  However, curative activities that occur

after the point in time that jurisdiction is determined can cure the defect.  For example, in

*Costello* once the proper affidavit was filed the denaturalization proceeding could

commence, *Costello*, 365 U.S. at 268; in *Martin* once proper service of process was

effectuated the case could commence; in *Napper* if the plaintiff had moved to another

state, the diversity of the parties requirement would be satisfied, *Napper*, 500 F.2d at 637.

For declaratory judgment actions, facts that could not be considered, because they

occurred after the filing of the declaratory judgment action was filed, could create the

requisite apprehension so that the action could recommence.  *Dozier* stands for the

proposition that plaintiffs cannot relitigate a jurisdictional dismissal by only alleging the

same facts in a subsequent action or facts that were <u>available at the time the case was</u>

<u>filed</u>, which could have been included in the original pleading.  *See, e.g. Magnus*

*Electronics v. La Republica Argentina*, 830 F.2d 1396, 1401 (7th Cir. 1987)("We think

*Dozier* [is] the better reasoned result … it does not make sense to allow a plaintiff to

begin the same suit over and over again in the same court, each time alleging additional

facts that the plaintiff was aware of <u>from the beginning of the suit</u>, until it satisfies the

jurisdictional requirements."(emphasis added)).

Under OSRAM's interpretation of *Dozier*, while a Court is determining whether

or not it can hear a declaratory judgment action, the patentee could conduct itself in such

a manner that would put the declaratory judgment plaintiff in reasonable apprehension of

suit (such as file a patent lawsuit case against them) but this activity could ***never*** be used

---

[6] *Costello v. United States*, 365 U.S. 265, 284-88 (1961) (lacking the requisite affidavit of good cause in a denaturalization proceeding); *Martin v. Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978) (failure of proper service of process); *Napper v. Anderson* 500 F.2d 643, 637 (5th Cir. 1974) (lack of residential diversity).

as evidence to support a later second declaratory judgment action by that same plaintiff if

the first declaratory judgment action is dismissed, and patentee's conduct was not or

could not have been used as evidence in the first declaratory judgment action.  Under

OSRAM's absurd reading, patentees have a window of opportunity to terrorize alleged

infringers without the patentee ever being taken into account.

In addition, even after this Court dismissed CE's first declaratory judgment suit,

rather than withdrawing its German case and retracting its press release, OSRAM

continued to pursue the German lawsuit, and in fact, perfected service of that suit <u>after</u>

the Court dismissed CE's first declaratory judgment suit.

### 5.  Filing of the Amended Complaint Further Moots the Preclusion Issue

CE has filed an amended complaint concurrent with the filing of this opposition.

CE has included the fact that CE has been formally served the German complaint. Am.

Complaint ¶32, Ex. U.  The date of filing of the amended complaint becomes the

controlling date of the filing of the declaratory judgment action.  *Millipore Corp. v.

University Patents Inc.*, 682 F. Supp. 227, 233 (D. Del. 1987).  Therefore, the formal

service of the German complaint before the filing of the amended complaint and after the

final dismissal of the first declaratory judgment action satisfies even OSRAM's

overreaching interpretation of the preclusion doctrine stated in *Dozier.*  As stated

previously, an express allegation of infringement, such as filing of a foreign patent

infringement suit based upon patents similar to their U.S. counterparts, is sufficient to

create a reasonable apprehension of imminent suit.  *Arrowhead*, 846 F.2d at 736, *Ethicon*,

369 F. Supp at 937.

## IV. CONCLUSION

Under the totality of circumstances, OSRAM's most recent actions must be considered together with the prior history between CE and OSRAM. The court had already found that OSRAM's prior allegations that CE infringed OSRAM's U.S. patents could provide CE with a reasonable apprehension of suit. But due to the time that elapsed until the filing of the first declaratory judgment action, there would not have been a reasonable apprehension at the time suit was filed. However, OSRAM's filing of the German suit, OSRAM's most recent press release, OSRAM's continued pursuit of the German suit, OSRAM's actions against CE's German distributor, and OSRAM's perfecting service on CE all make clear that CE certainly had a reasonable apprehension of litigation at the time the Complaint was filed in this suit and at the time of the First Amended Complaint.

The Court therefore has subject matter jurisdiction over this Complaint. CE has demonstrated that there is a true, "actual controversy" as required by the Declaratory Judgment Act. First, CE had a reasonable apprehension of being sued by OSRAM based upon the fact OSRAM is suing CE in Germany on patents related to the patents in this action's complaint. Issue preclusion does not apply to OSRAM's German lawsuit. Second, as of the filing of the Complaint and the Amended Complaint, CE had imported into the United States and offered for sale and sold the white LEDs that OSRAM accuses of infringement.

Therefore, CE respectfully requests that the Court deny OSRAM's Motion to Dismiss.

24

Dated:  November 10, 2005          OBLON, SPIVAK, McCLELLAND,
                                   MAIER & NEUSTADT, P.C.


                                   _____
                                   Robert C. Nissen, Esq. (Bar No. 455,576)
                                   1940 Duke Street
                                   Alexandria, VA 22314
                                   (703) 413-3000

                                   Attorneys for Plaintiff

                                   CITIZEN ELECTRONICS COMPANY, LTD.

25