## BAKER & McKENZIE

**Baker & McKenzie LLP**
Rechtsanwälte
Bethmannstraße 50-54
60311 Frankfurt/Main

Tel.: +49 (0) 69 2 99 08 0
Fax: +49 (0) 69 2 99 08 108
www.bakernet.com

# Abschrift

Aslen & Pazifik
Bangkok
Hanoi
Ho-Chi-Minh-Stadt
Hongkong
Jakarta
Kuala Lumpur
Manila
Melbourne
Peking
Schanghai
Singapur
Sydney
Taipeh
Tokio

**Europa &
Mittlerer Osten**
Almaty
Amsterdam
Antwerpen
Bahrain
Baku
Barcelona
Berlin
Bologna
Brüssel, ELC
Budapest
Düsseldorf
Frankfurt/Main
Genf
Kairo
Kiew
London
Madrid
Mailand
Moskau
München
Paris
Prag
Riad
Rom
Stockholm
St. Petersburg
Warschau
Wien
Zürich

**Nord- & Süd-
Amerika**
Bogota
Brasilia
Buenos Aires
Calgary
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juárez
Mexiko-Stadt
Miami
Monterrey (Mexiko)
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago de Chile
São Paulo
Tijuana
Toronto
Valencia (Venezuela)
Washington D.C.

**Dr. Günter Pickrahn, LL.M.**
Rechtsanwalt
Tel.: +49 (0) 69 2 99 08 232
guenter.pickrahn@bakernet.com
Unser Zeichen: GP/um

Landgericht Düsseldorf
4. Zivilkammer


40002 Düsseldorf

14. März 2005


# Klage

In Sachen

OSRAM Opto Semiconductors GmbH, vertreten durch ihre Geschäftsführer Dr.
Rüdiger Müller, Robert Wittgen und Klaus Regitz, Wernerwerkstrasse 2, 93049
Regensburg

- Klägerin -

Prozessbevollmächtigt:     Dr. Günter Pickrahn, Baker & McKenzie LLP, Beth-
mannstrasse 50-54, 60311 Frankfurt am Main

g e g e n

1.    Citizen Electronics Co, Ltd., 1-23-1 Kamikurechi, Fujiyoshida-shi, Ya-
manashi-ken 403-0001, Japan, vertreten durch ihren Präsidenten, Herrn
Takashi Masuzawa

- Beklagte zu 1 -

2.    Endrich Bauelemente Vertriebs GmbH, vertreten durch ihre Geschäfts-
führer Herrn Wolfgang Endrich und Frau Ursula Endrich, Haupstr.56,
72202 Nagold

- Beklagte zu 2 -

wegen: Patent- und Gebrauchsmusterverletzung
vorläufiger Streitwert: EUR 5.000.000,--

Friedrichstraße 79-80
10117 Berlin
Tel.: +49 (0) 30 2 03 87 600
Fax: +49 (0) 30 2 03 87 699

Neuer Zollhof 2
40221 Düsseldorf
Tel.: +49 (0) 211 3 11 16 0
Fax: +49 (0) 211 3 11 16 199

Theatinerstraße 23
80333 München
Tel.: +49 (0) 89 5 52 38 0
Fax: +49 (0) 89 5 52 38 199

Bankverbindung (Bank Account) I Commerzbank AG Frankfurt/Main I Kto.-Nr.: 3 100 310 I BLZ 500 400 00
SWIFT: COBADEFFXXX I IBAN DE79 5004 0000 0310 0310 00

Baker & McKenzie LLP ist eine Limited Liability Partnership nach dem Recht des Staates Illinois (USA) und
Mitglied von Baker & McKenzie International, einem Verein nach dem Recht der Schweiz.

**BAKER & MᶜKENZIE**

Namens und im Auftrag der Klägerin erheben wir Klage. Wir werden die folgenden Anträge stellen:

1.  Die Beklagten werden verurteilt,

es bei Meidung eines für jeden Fall der Zuwiderhandlung fälligen Ordnungsgeldes bis zu € 250.000,--, ersatzweise Ordnungshaft bis zu 6 Monaten, oder Ordnungshaft bis zu 6 Monaten, im Wiederholungsfalle Ordnungshaft bis zu 2 Jahren, zu unterlassen,

(1)   lichtabstrahlende Halbleiterbauelemente mit einem Halbleiterkörper, der im Betrieb des Halbleiterbauelements elektromagnetische Strahlung aussendet, mit mindestens einem ersten und mindestens einem zweiten elektrischen Anschluss, die mit dem Halbleiterkörper elektrisch leitend verbunden sind, und mit einem Lumineszenzkonversionselement, das mindestens einen Leuchtstoff aufweist,

anzubieten, in Verkehr zu bringen oder zu gebrauchen oder zu den genannten Zwecken entweder einzuführen oder zu besitzen,

bei denen der Halbleiterkörper eine Halbleiterschichtenfolge aufweist, die geeignet ist, im Betrieb des Halbleiterbauelements elektromagnetische Strahlung eines ersten Wellenlängenbereiches aus dem ultravioletten, blauen und/oder grünen Spektralbereich auszusenden, das Lumineszenzkonversionselement eine aus dem ersten Wellenlängenbereich stammende Strahlung in Strahlung eines vom ersten verschiedenen zweiten Wellenlängenbereiches umwandelt und zumindest einen Teil der elektromagnetischen Strahlung des ersten Wellenlängenbereiches hindurch lässt, derart, dass das Halbleiterbauelement Mischstrahlung aus Strahlung des ersten Wellenlängenbereiches und Strahlung des zweiten Wellenlängenbereiches aussendet, und bei denen das Lumineszenzkonversionselement zusätzlich zum Leuchtstoff lichtstreuende Partikel enthält (Anspruch 1 des DE-GM 29 724 847),

und

das Lumineszenzkonversionselement mindestens einen anorganischen Leuchtstoff aus der Gruppe der Phosphore aufweist (Anspruch 14 des DE-GM 29 724 847),

und

der anorganische Leuchtstoff in einer Epoxidharz-Matrix eingebettet ist (Anspruch 17 des DE-GM 29 724 847),

**BAKER & MCKENZIE**

insbesondere wenn

das Lumineszenzkonversionselement in Hauptstrahlrichtung des Halbleiterbauelements gesehen im Wesentlichen dem Halbleiter-körper nachgeordnet ist (Anspruch 3 des DE-GM 29 724 847),

insbesondere wenn

der bzw. die zweiten Wellenlängebereiche zumindest teilweise grö-ßere Wellenlängen λ aufweisen, als der erste Wellenlängenbereich (Anspruch 6 des DE-GM 29 724 847),

insbesondere wenn

der erste Wellenlängenbereich und der zweite Wellenlängenbereich der Mischstrahlung zumindest teilweise in zueinander komplemen-tärfarbigen Spekralbereichen liegen, so dass weißes Licht erzeugt wird (Anspruch 8 des DE-GM 29 724 847),

insbesondere wenn

die vom Halbleiterkörper ausgesandte Strahlung bei einer Wellen-länge $\lambda \leq 520$ µm ein Intensitätsmaximum aufweist (Anspruch 10 des DE-GM 29 724 847),

insbesondere wenn

der anorganische Leuchtstoff aus der Gruppe der Ce-dotierten Gra-nate ist (Anspruch 15 des DE-GM 29 724 847),

(2)  lichtabstrahlende Halbleiterbauelemente

mit einer wellenlängenkonvertierenden Vergussmasse auf der Basis eines transparenten Epoxidharzes für ein elektrolumineszierendes Bauelement mit einem ultraviolettes, blaues und/oder grünes Licht aussendenden Körper, bei der im transparenten Epoxidharz ein an-organisches Leuchtstoffpigmentpulver mit Leuchtstoffpigmenten aus der Gruppe der Phosphore mit der allgemeinen Formel $A_3B_5X_{12}:M$ dispergiert ist und die Leuchtstoffpigmente Korngrößen $\leq 20$ µm und einen mittleren Korndurchmesser $d_{50} \leq 5$ µm aufwei-sen und

mit einem Halbleiterkörper, der im Betrieb des Halbleiterelements elektromagnetische Strahlung aussendet

anzubieten, in Verkehr zu bringen oder zu gebrauchen oder zu den genannten Zwecken entweder einzuführen oder zu besitzen,

**BAKER & MᶜKENZIE**

bei denen der Halbleiterkörper eine Halbleiterschichtenfolge auf-
weist, die geeignet ist, im Betrieb des Halbleiterbauelements elekt-
romagnetische Strahlung aus dem ultravioletten, blauen und/oder
grünen Spektralbereich auszusenden, und die Leuchtstoffpigmente
einen Teil der aus diesem Spektralbereich stammenden Strahlung in
Strahlung mit größerer Wellenlänge umwandelt, derart, dass das
Halbleiterbauelement Mischstrahlung, insbesondere mischfarbiges
Licht, bestehend aus dieser Strahlung aus dem ultravioletten, blauen
und/oder grünen Spektralbereich aussendet (Anspruch 21 des EP 0
862 794 bzw. Anspruch 13 des DE-GM 297 24 382)

insbesondere wenn

die Vergussmasse zumindest einen Teil des Halbleiterkörpers um-
schließt (Anspruch 22 des EP 0 862 794 bzw. Anspruch 14 des DE-
GM 297 24 382)

(3)  lichtabstrahlende Halbleiterbauelemente mit einem Halbleiterkör-
per, der im Betrieb des Halbleiterbauelements elektromagnetische
Strahlung aussendet, mit mindestens einem ersten und mindestens
einem zweiten elektrischen Anschluss, die mit dem Halbleiterkör-
per elektrisch leitend verbunden sind, und mit einem Lumineszenz-
konversionselement, das mindestens einen Leuchtstoff aufweist,

anzubieten, in Verkehr zu bringen oder zu gebrauchen oder zu den
genannten Zwecken entweder einzuführen oder zu besitzen,

bei denen der Halbleiterkörper eine Halbleiterschichtenfolge auf-
weist, die geeignet ist, im Betrieb des Halbleiterbauelements elekt-
romagnetische Strahlung eines ersten Wellenlängenbereiches aus
dem ultravioletten, blauen und/oder grünen Spektralbereich auszu-
senden, das Lumineszenzkonversionselement eine aus dem ersten
Wellenlängenbereich stammende Strahlung in Strahlung eines vom
ersten verschiedenen zweiten Wellenlängenbereiches umwandelt
und zumindest einen Teil der elektromagnetischen Strahlung des
ersten Wellenlängenbereiches hindurch lässt, derart, dass das Halb-
leiterbauelement Mischstrahlung, bestehend aus Strahlung des ers-
ten Wellenlängenbereiches und Strahlung des zweiten Wellenlän-
genbereiches aussendet, und bei denen eine Weglänge der von dem
Halbleiterkörper ausgesandten elektromagnetischen Strahlung des
ersten Wellenlängenbereiches durch das Lumineszenzkonversionse-
lement hindurch für alle Strahlungsrichtungen näherungsweise
gleich groß ist (Anspruch 1 DE-GM 297 24 848).

und

4

BAKER & MᶜKENZIE

das Lumineszenzkonversionselement mindestens einen anorganischen Leuchtstoff aus der Gruppe der Phosphore aufweist (Anspruch 14 des DE-GM 297 24 848)

und

der anorganische Leuchtstoff in einer Epoxidharz-Matrix eingebettet ist (Anspruch 17 von DE-GM 297 24 848)

insbesondere wenn

das Lumineszenzkonversionselement in Hauptabstrahlrichtung des Halbleiterbauelements gesehen im Wesentlichen dem Halbleiterkörper nachgeordnet ist (Anspruch 3 von DE-GM 297 24 848),

insbesondere wenn

der zweite Wellenlängenbereich zumindest teilweise größere Wellenlängen $\lambda$ aufweist, als der erste Wellenlängenbereich (Anspruch 6 von DE-GM 297 24 848),

insbesondere wenn

der erste Wellenlängenbereich und der zweite Wellenlängenbereich der Mischstrahlung zumindest teilweise in zueinander komplementärfarbigen Spektralbereichen liegen, so dass weißes Licht erzeugt wird (Anspruch 8 von DE-GM 297 24 848),

insbesondere wenn

die vom Halbleiterkörper ausgesandte Strahlung bei einer Wellenlänge $\lambda \leq 520$ nm ein Intensitätsmaximum aufweist (Anspruch 10 von DE-GM 297 24 848),

insbesondere wenn

der anorganische Leuchtstoff aus der Gruppe der Ce-dotierten Granate ist (Anspruch 15 von DE-GM 297 24 848)

insbesondere wenn

das Lumineszenzkonversionselement lichtstreuende Partikel aufweist (Anspruch 22 von DE-GM 297 24 848).

2. Die Beklagten werden verurteilt,

der Klägerin darüber Rechnung zu legen, in welchem Umfang die Beklagten die zu 1 bezeichneten Handlungen begangen haben, und zwar im

BAKER & M<sup>c</sup>KENZIE

Hinblick auf die einzelnen im Folgenden aufgeführten Klageanträge zu den jeweils aufgeführten Daten:

Klageantrag 1 (1): ab 4. Dezember 2004

Klageantrag 1 (2): ab 9. Oktober 1998

Klageantrag 1 (3): ab 4. Dezember 2004

und zwar unter Angabe

a)    der einzelnen Lieferungen, aufgeschlüsselt nach Liefermengen, Lieferzeiten und Lieferpreisen sowie der Namen und Anschriften der Abnehmer,

b)    der einzelnen Angebote, aufgeschlüsselt nach Angebotsmengen, Angebotszeiten und Angebotspreisen sowie der Namen und Anschriften der Angebotsempfänger,

c)    der betriebenen Werbung, aufgeschlüsselt nach Werbeträgern, deren Auflagenhöhe, Verbreitungszeitraum und Verbreitungsgebiet,

d)    der nach den einzelnen Kostenfaktoren aufgeschlüsselten Gestehungskosten und des erzielten Gewinns, der nicht durch den Abzug von Fixkosten und variablen Gemeinkosten gemindert werden darf, es sei denn, diese könnten ausnahmsweise den vorstehend zu 1 bezeichneten Erzeugnissen unmittelbar zugeordnet werden,

wobei den Beklagten vorbehalten bleiben mag, die Namen und Anschriften der nicht gewerblichen Abnehmer und der Angebotsempfänger statt der Klägerin einem von dieser zu bezeichnenden und ihr gegenüber zur Verschwiegenheit verpflichteten vereidigten Wirtschaftsprüfer mitzuteilen, sofern die Beklagten dessen Kosten tragen und ihn ermächtigen und verpflichten, der Klägerin auf konkrete Anfrage mitzuteilen, ob ein bestimmter Abnehmer oder Angebotsempfänger in der Aufstellung enthalten ist.

3.    Die Beklagten werden verurteilt,

die im unmittelbaren oder mittelbaren Besitz oder im Eigentum der Beklagten befindlichen Erzeugnisse entsprechend vorstehend 1 an einen von der Klägerin zu beauftragenden Gerichtsvollzieher zum Zwecke der Vernichtung auf Kosten der Beklagten herauszugeben.

4.    Es wird festgestellt, dass die Beklagten gesamtschuldnerisch verpflichtet sind, der Klägerin allen Schaden zu ersetzen, der ihr durch die zu 1 bezeichneten und in den nachstehend bezeichneten Zeiten begangenen Handlungen entstanden ist und noch entstehen wird, nämlich

**BAKER & MᶜKENZIE**

Klageantrag 1 (1): ab 4. Dezember 2004

Klageantrag 1 (2): ab 25. Februar 2001

Klageantrag 1 (3): ab 4. Dezember 2004

5.   Es wird festgestellt, dass die Beklagten gesamtschuldnerisch verpflichtet sind, der Klägerin für die im Klageantrag 1 (2) bezeichneten und in der Zeit vom 9. Oktober 1998 bis zum 25. Februar 2001 begangenen Handlungen eine angemessene Entschädigung zu zahlen.

**Begründung:**

**I.    Die Parteien**

1.   Die Klägerin gehört zur OSRAM Gruppe, eines der größten Beleuchtungsunternehmen der Welt. Sie entwickelt und vertreibt insbesondere Leuchtdioden (Licht Emittierende Dioden/LED), die Gegenstand der Deutschen Gebrauchsmuster DE 297 24 847, DE 297 24 382 und DE 297 24 848 (im folgenden „Klagegebrauchsmuster") sowie des Europäischen Patents EP 0 862 794 sind.

Wir fügen – für das Gericht dreifach – eine Kopie des Klagegebrauchsmusters DE 297 24 847 (im folgenden „Klagegebrauchsmuster I") als

**Anlage K 1**

bei. Das Klagebebrauchsmuster I wurde aus dem Europäischen Patent mit der Anmeldenummer 97931666.8 abgezweigt und am 30. September 2004 eingetragen. Die Eintragung wurde am 4. November 2004 veröffentlicht.

Eine Kopie des Klagegebrauchsmusters DE 297 24 382 (im folgenden „Klagegebrauchsmuster II") fügen wir – für das Gericht dreifach - als

BAKER & McKENZIE

Anlage K 2a

bei. Das Klagebebrauchsmuster II wurde aus dem Europäischen Patent EP 0 862 794 abgezweigt und am 21. Dezember 2000 eingetragen. Die Eintragung wurde am 25. Januar 2001 veröffentlicht. Eine Kopie des am 27. November 2002 erteilten Europäischen Patents 0 862 794 (im Folgenden „Klagepatent") fügen wir - für das Gericht dreifach - als

Anlage K 2b

bei.

Schließlich überreichen wir – für das Gericht dreifach – eine Kopie des Klagegebrauchsmusters DE 297 24 848 (im folgenden „Klagegebrauchsmuster III") als

Anlage K 3.

Das Klagegebrauchsmuster III wurde – wie das Klagegebrauchsmuster I - aus dem Europäischen Patent mit der Anmeldenummer 97931666.8 abgezweigt und am 30. September 2004 eingetragen. Die Eintragung wurde am 4. November 2004 veröffentlicht.

Die Klagegebrauchsmuster sowie das Klagepatent stehen in Kraft.

**Beweis:**        Auskunft des Deutschen Patent- und Markenamtes.

2.    Die Beklagte zu 1 stellt her und vertreibt LED, die weißes Licht abstrahlen. Die Beklagte zu 2 ist eine Händlerin, die unter anderem auch LED der Beklagten zu 1 verkauft. So lieferte sie im Februar 2004 an einen Mitarbeiter der Klägerin unter anderem 5000 LED des Typs CL-270WA-D-TS der Beklagten zu 1.

**BAKER & McKENZIE**

**Beweis:** 1.  Rechnung der Beklagten zu 2 über die Lieferung von LED der Beklagten zu 1 vom 9. Februar 2004, in Kopie anbei als **Anlage K 4**.

2.  Muster der LED des Typs CL-270WA-D-TS der Beklagten zu 1, anbei als **Anlage K 5**.

## II.  Technischer Hintergrund der Klageschutzrechte

Gegenstand aller Klageschutzrechte sind lichtabstrahlende Halbleiterbauelemente mit einem Strahlung aussendenden Halbleiterkörper und einem Lumineszenzkonversionselement. Zu dieser Gruppe von Halbleiterbauelementen gehören auch die Leuchtdiodenbauelemente (LED – Light Emitting Diode), die als Strahlung aussendenden Halbleiterkörper einen Leuchtdiodenchip (LED-Chip) besitzen, der Licht einer bestimmten spektralen Farbe emittiert. Ein Lumineszenzkonversionselement nach der Lehre der Klageschutzrechte ist eine bevorzugt aus transparentem Harz bestehende Umhüllungsmasse, der ein Leuchtstoff zugesetzt ist. Dieser Leuchtstoff absorbiert Licht eines bestimmten Wellenlängenbereiches und wird dadurch selbst zum Leuchten angeregt. Das vom angeregten Leuchtstoff emittierte Licht stammt aus einem gegenüber dem absorbierten Licht des Leuchtdiodenchips längerwelligen Wellenlängenbereich und ist damit Licht einer anderen spektralen Farbe als das Licht des Leuchtdiodenchips.

Zum besseren Verständnis der Begriffe „Lumineszenz" und „Leuchtstoff" legen wir als

### Anlagen K 6 und K 7

zwei Auszüge aus DER BROCKHAUS, Naturwissenschaft und Technik, Band 2, 1. Auflage, 2003, vor. Dort wird insbesondere dargelegt, dass das Phänomen der Lumineszenz von Leuchtstoffen materialspezifisch ist und

**BAKER & MCKENZIE**

auch durch elektromagnetische Strahlung, wie sie von einem LED-Chip erzeugt wird, ausgelöst werden kann.

LED sind aus der modernen Beleuchtungstechnik nicht mehr hinwegzudenken. Gegenüber herkömmlichen Glühbirnen haben LED den Vorteil, dass sie weniger Strom verbrauchen und eine deutlich höhere Lebensdauer besitzen. Sie werden nicht nur eingesetzt zur Hinterleuchtung von Displays wie z. B. bei Handys oder zur Beleuchtung von Cockpits. Zunehmend dienen LED auch als reine Beleuchtungsquelle, wie z. B. bei Scheinwerfern von Kraftfahrzeugen.

Bei allen diesen Anwendungen, insbesondere in der Allgemeinbeleuchtungstechnik geht ein besonders Bestreben dahin, weißes Licht zu verwenden. Weißes Licht lässt sich jedoch nur als Mischung von Licht verschiedener Farbe erzielen. So ergibt zum Beispiel eine geeignete Mischung von rotem, grünem und blauem Licht weißes Mischlicht. Wir verweisen insoweit auf das als

**Anlage K 8**

vorgelegte CIE Diagramm. Dieses auch als chromatisches Diagramm bezeichnete Farbdiagramm umfasst alle vom Menschen wahrnehmbaren Farben bei einer konstanten Helligkeitsstufe. Die 100 Prozent reinen Farben des Spektrums liegen auf dem gekrümmten Teil des Randes. Ein standardisiertes weißes Licht wird durch einen Punkt in der Mitte markiert. Diesen Punkt bezeichnet man auch als Unbuntpunkt. Die Farben des Spektrums sind hufeisenförmig um diesen absoluten Weißpunkt angeordnet. Jeder Punkt innerhalb des Hufeisens stellt eine Farbart dar. Stehen für eine Mischfarbe beispielsweise die Farbarten A und B zur Verfügung, dann lassen sich nur diejenigen Farbarten durch Farbmischung erzeugen, die auf der geraden Verbindungslinie zwischen der Farbart A und der Farbart B liegen. Weißes Licht lässt sich demnach nur dann aus zwei Farbarten mischen, wenn die gerade Verbindungslinie

**BAKER & McKENZIE**

durch den weißen Bereich des CIE-Diagramms verläuft. Weißes Licht lässt sich z. B. aus blauem und gelbem Licht, nicht aber aus blauem und grünem Licht mischen.

Die eigentliche Lichtquelle einer LED ist der sogenannte LED-Chip. Dieser besteht aus einem Halbleiter, der Licht aus dem sichtbaren Spektrum emittiert, wenn er durch einen Betriebsstrom angeregt wird. Die Farbe des vom Halbleiter emittierten Lichts ist dabei abhängig vom Materialsystem und von der speziellen Ausgestaltung der die Strahlung erzeugenden Schichtenfolge des Halbleiterkörpers.

Ein Charakteristikum jedes LED-Chips ist, dass dieser abhängig vom zu Grunde liegenden Halbleitermaterial stets nur Licht einer einzigen spektralen Farbe emittieren kann.

Um trotzdem eine weißes Licht emittierende LED herstellen zu können, benutzte man nach einer zum Prioritätszeitpunkt der Klageschutzrechte technisch gängigen Methode drei LED-Chips verschiedener Farbe (blau, grün und rot) in einem gemeinsamen LED-Gehäuse. Allein aufgrund der Notwendigkeit von drei LED-Chips stellte dies eine technisch sehr aufwendige Methode dar, zumal die drei LED-Chips aufgrund unterschiedlicher Halbleitermaterialsysteme unterschiedliche Ansteuerspannungen und –ströme erforderten. Zudem ergaben sich aufgrund unterschiedlicher Alterungseigenschaften der verschiedenen LED-Chips unerwünschte Veränderungen in dem von der LED erzeugten Weißton.

Ein aus dem Stand der Technik bekannter Ansatz, unter Verwendung von Leuchtdioden einer einzigen Farbe eine planare Lichtquelle, insbesondere zum Hinterleuchten von Displays mit weißem Licht zu realisieren, ist in der japanischen Offenlegungsschrift JP-07 176 794 A vorgeschlagen. Dort wird ein blaues Licht abstrahlendes LED-Bauelement derart seitlich an eine Lichtleiterplatte angekoppelt, dass das blaue Licht des LED-Bauelements an den beiden einander gegenüber liegenden Hauptflächen

11

BAKER & MCKENZIE

der Lichtleiterplatte totalreflektiert und das blaue Licht des LED-Bauelements über die gesamte Fläche der Lichtleiterplatte verteilt wird.

An der Licht abstrahlenden Vorderseite der Lichtleiterplatte ist eine Streuplatte angeordnet, durch die Licht aus der Anordnung ausgekoppelt und als Hintergrundbeleuchtung bereitgestellt wird. Auf die Rückseite der Lichtleiterplatte ist eine fluoreszierende und lichtstreuende Substanz aufgebracht, die aus einer Mischung von fluoreszierenden Partikeln und weißen Pigmenten besteht. Die fluoreszierende und lichtstreuende Substanz konvertiert das blaue Licht des LED-Bauelements und streut dieses konvertierte Licht zur Licht abstrahlenden Vorderseite der Lichtleiterplatte, wo es ausgekoppelt werden kann. Die fluoreszierende und lichtstreuende Substanz ist in Form rasterförmiger Konversionspunkte auf die Rückseite der Leiterplatte aufgedruckt, wobei die fluoreszierende und lichtstreuende Substanz als Tinte, in der die fluoreszierenden Partikel und lichtstreuenden Pigmente gemischt sind, angewendet wird. Blaues Licht, das in diese Konversionspunkte eindringt, wird von den fluoreszierenden Partikeln konvertiert und mittels der weißen Pigmente gestreut. Als fluoreszierende Substanz sind organische fluoreszierende Pigmente vorgesehen.

Weiterhin ist an der Rückseite der Lichtleiterplatte eine reflektierende Platte vorgesehen, die Licht, das zur Rückseite der Lichtleiterplatte gelangt, zur Vorderseite der Lichtleiterplatte reflektiert. Gleichzeitig mit dem von den Konversionspunkten konvertierten Licht wird durch die Vorderseite auch blaues Licht des LED-Bauelements ausgekoppelt. Das blaue Licht des LED- Bauelements und das konvertierte Licht von den Konversionspunkten werden dann von der der Vorderseite der Lichtleiterplatte nachgeordneten Streuplatte zum gewünschten weißen Mischlicht gemischt.

Diese Anordnung ist speziell dazu eingerichtet, einerseits das von der LED ausgesandte blaue Licht über eine größere Fläche, wie sie für eine

**BAKER & McKENZIE**

Display- Hintergrundbeleuchtung erforderlich ist, zu verteilen, und anderererseits einen Teil des blauen Lichts umzuwandeln, so dass als Mischlicht weißes Licht entsteht.

Ein besonderer Vorteil dieser Anordnung soll gemäß der genannten Druckschrift darin bestehen, dass die fluoreszierende Substanz nicht in direktem Kontakt mit dem LED-Chip steht, wodurch die Degradation (Verschlechterung) der fluoreszierenden Substanz klein sein soll und eine Farbtonveränderung der planaren Lichtquelle über eine lange Zeit verhindert werden soll.

Die Aufgabe, einheitliches weißes Licht zu erzeugen, soll gemäß der JP-07 176794 A gerade dadurch gelöst werden, dass die Konversion nicht im LED-Bauelement selbst, sondern entfernt vom LED-Bauelement großflächig stattfindet.

Dabei ergibt sich aber folgende Problematik. Das auf der Vorderseite durch die Streuscheibe austretende Licht setzt sich aus vielen Komponenten zusammen: Nämlich aus (1) blauem Licht, das direkt von der blauen LED zur Streuscheibe gelangt, (2) blauem Licht, das an der Rückseite der Lichtleiterplatte reflektiert wurde, (3) blauem Licht, das zwischen den Konversionspunkten hindurch auf die reflektierende Platte gelangt ist, dort reflektiert wurde und dann zur Streuscheibe gelangt ist, und (4) konvertiertem Licht, das in den Konversionspunkten aus dort eingedrungenem blauen Licht erzeugt wurde und wieder nach oben zur Streuscheibe gelangt ist. Die quantitativen Anteile der genannten Lichtkomponenten können durch die physikalischen Parameter der verwendeten Materialien sowie den Aufbau der Anordnung beeinflusst werden. Nur bei optimaler Gestaltung sämtlicher Parameter setzen sich die verschiedenen Lichtkomponenten so zusammen, dass für einen Beobachter weißes Licht erkennbar ist. Diese gleichzeitige Optimierung aller Parameter, die zumindest teilweise miteinander in Wechselwirkung stehen, ist jedoch schwierig. Insbesondere ist es schwierig, die fluoreszierende Substanz so exakt

13

BAKER & MᶜKENZIE

aufzubringen, dass nach außen homogenes Licht abgestrahlt wird. Darüber hinaus bereitet die Reproduzierbarkeit in der Massenfertigung große Probleme, weil schon geringe Schichtdickenschwankungen der fluoreszierenden Konversionspunkte, z.B. aufgrund von Unebenheiten der Oberfläche der transparenten Platte, eine Änderung des Weißtones des abgestrahlten Lichts hervorrufen. Ebenso können Schwankungen im Abstrahlwinkel der LED- Bauelemente, wie sie in der Massenproduktion vorkommen, oder schielende LED- Bauelemente, zu Inhomogenitäten im abgestrahlten Mischlicht aufgrund unterschiedlicher Lichtverteilungen in der Lichtleiterplatte führen. Die gezeigte Anordnung weist zudem einen erheblichen Platzbedarf auf, was mit dem Streben nach immer weitergehender Miniaturisierung elektronischer Geräte nicht vereinbar ist.

Es bestand daher ein starkes Bestreben, LED-Bauelemente zu entwickeln, die mittels eines einzigen LED-Chips oder mittels LED-Chips einer einzigen Farbe selbst bereits auf technisch einfache Weise weißes Licht emittieren. Solche LED-Bauelemente sollten auch in Großserien und daher möglichst einfach und kostengünstig herstellbar sein.

Zur Lösung dieses technischen Problems lehren die Klageschutzrechte, den LED-Chip innerhalb des LED-Bauelementgehäuses mit einem Lumineszenzkonversionselement zu maskieren, das

- einen Teil der vom LED-Chip emittierten Strahlung („Primärstrahlung") absorbiert, dadurch selbst zum Leuchten angeregt wird und Licht anderer Farbe („Sekundärstrahlung") emittiert
- einen anderen Teil der vom LED-Chip emittierten Strahlung (also Primärstrahlung) ohne diesen zu absorbieren durchlässt,
- Sekundärstrahlung und Primärstrahlung mischt und

Mischlicht aus Sekundärstrahlung und Primärstrahlung emittiert.

**BAKER & McKENZIE**

Ein Betrachter nimmt das von einem solchen maskierten LED-Chip ab-gestrahlte Licht als Mischung der Primär- und Sekundärstrahlung wahr. Um weißes Licht zu erzielen, muss man einen Leuchtstoff wählen, der eine Sekundärstrahlung erzeugt, die in Kombination mit der Primärstrah-lung des Halbleiterchips weißes (Misch-) Licht erzeugt. Wichtig ist für die Wahrnehmung dieses Mischlichts als homogenes weißes Licht, dass das Mischlicht für den Betrachter aus verschiedenen Blickrichtungen in dem gleichen Weißton erscheint.

**III.  Verletzung des Klagegebrauchsmusters I**

1.  Klagegebrauchsmuster I

Das Klagegebrauchsmuster I setzt auf der oben beschriebenen techni-schen Lehre auf, eine Primärstrahlung des Halbleiterchips durch Ver-wendung eines mit Leuchtstoff versetzten Lumineszenzkonversionsele-mentes teilweise in Sekundärstrahlung umzuwandeln. Ihm liegt die Auf-gabe zugrunde, einen Halbleiterchip herzustellen, der homogenes misch-farbiges Licht abstrahlt. Dies ist bevorzugt weißes Mischlicht. Die Lehre des Klagegebrauchsmusters I zielt insbesondere darauf ab, den Farbein-druck und die Abstrahlcharakteristik eines Halbleiterbauelements mit ei-nem Lumineszenzkonversionselement zu optimieren (Anlage K1, Seite 10, Zeilen 7 bis 14).

Gemäß der Erfindung ist das Lumineszenzkonversionselement derart ausgestaltet, dass es einen Teil der Primärstrahlung (Strahlung eines ers-ten Wellenlängenbereichs) mittels des Leuchtstoffes in Sekundärstrah-lung (Strahlung eines zweiten Wellenlängenbereiches) umwandelt. Gleichzeitig lässt es aber auch einen Teil der Primärstrahlung hindurch, so dass das menschliche Auge eine Mischung aus Primärstrahlung und Sekundärstrahlung wahrnimmt. Das Klagegebrauchsmusters I lehrt nun in Bezug auf dieses Lumineszenzkonversionselement insbesondere, die-ses zusätzlich zum Leuchtstoff mit lichtstreuenden Partikeln (Diffusoren)

15

BAKER & M<sup>c</sup>KENZIE

zu versehen und den Leuchtstoff aus der Gruppe der Phosphore auszu-
wählen. Das Lumineszenzkonversionselement gemäß der Lehre des Kla-
gegebrauchsmusters I enthält somit neben dem Phosphor-Leuchtstoff
auch lichtstreuende Partikel. Dies führt zu einer deutlichen Verbesserung
des Farbeindrucks und der Abstrahlcharakteristik eines gattungsgemäßen
Halbleiterbauelements und damit zur Lösung des zu Grunde liegenden
technischen Problems. Die lichtstreuenden Partikel haben dabei eine
Doppelfunktion. Zum einen führt die erhöhte Anzahl der Reflexionen
von Lichtstrahlen auf dem Weg durch das Lumineszenzkonversionsele-
ment zu einer verbesserten Durchmischung der vom Lumineszenzkon-
versionselement hindurch gelassenen Primärstrahlung und der vom
Leuchtstoff emittierten Sekundärstrahlung. Zum anderen führt die Hinzu-
fügung von lichtstreuenden Partikeln zu einer homogeneren Verteilung
des Leuchtstoffs um den LED-Chip herum.

Durch die Auswahl des Leuchtstoffes aus der Gruppe der Phosphore wird
vorteilhafterweise die Degradation (Verschlechterung) des Lumineszenz-
konversionselements erheblich reduziert.

Schließlich wird durch die Einbettung des anorganischen Leuchtstoffes in
eine Epoxidharzmatrix ermöglicht, dass die Halbleiterbauelemente mit
herkömmlichen Produktionslinien der LED-Bauelemente-Fertigung ver-
gleichsweise einfach hergestellt werden können.

Ausgehend von Schutzanspruch 17 des Klagegebrauchsmusters I ergibt
sich folgende Merkmalsanalyse:

1.  Lichtabstrahlendes Halbleiterbauelement,

2.  mit einem Halbleiterkörper, der im Betrieb des Halbleiterbauelements
    elektromagnetische Strahlung aussendet,

BAKER & McKENZIE

3. mit mindestens einem ersten und mindestens einem zweiten elektrischen Anschluss, die mit dem Halbleiterkörper elektrisch leitend verbunden sind, und

4. mit einem Lumineszenzkonversionselement, das mindestens einen Leuchtstoff aufweist,

5. der Halbleiterkörper weist eine Halbleiterschichtenfolge auf, die geeignet ist, im Betrieb des Halbleiterbauelements elektromagnetische Strahlung eines ersten Wellenlängenbereiches aus dem ultravioletten, blauen und/oder grünen Spektralbereich auszusenden,

6. das Lumineszenzkonversionselement wandelt eine aus dem ersten Wellenlängenbereich stammende Strahlung in Strahlung eines vom ersten verschiedenen zweiten Wellenlängenbereiches um

7. das Lumineszenzkonversionselement lässt zumindest einen Teil der elektromagnetischen Strahlung des ersten Wellenlängenbereiches hindurch,

8. das Halbleiterbauelement sendet Mischstrahlung aus Strahlung des ersten Wellenlängenbereiches und Strahlung des zweiten Wellenlängenbereiches aus,

9. das Lumineszenzkonversionselement enthält zusätzlich zum Leuchtstoff lichtstreuende Partikel,

10. das Lumineszenzkonversionselement weist mindestens einen anorganischen Leuchtstoff aus der Gruppe der Phosphore auf,

11. der anorganische Leuchtstoff ist in einer Epoxidharz-Matrix eingebettet.

17

**BAKER & McKENZIE**

Die vorstehend wiedergegebene Merkmalsanalyse wird zur Arbeitser-
leichterung noch einmal gesondert – für das Gericht dreifach - als

**Anlage K 9**

überreicht.

Bevorzugte Ausführungsformen und Weiterbildungen, die für den vorlie-
genden Fall von Interesse sind, finden sich in den Schutzansprüchen 3, 6,
8, 10, und 15.

2.    Verletzung des Anspruchs 17 des Klagegebrauchsmusters I

Die von den Beklagten vertriebenen LED machen von den Merkmalen
des Schutzanspruches 17 des Klagegebrauchsmusters I wortlautgemäß
Gebrauch.

Wir fügen als

**Anlage K 10**

eine Schemazeichnung der Verletzungsform bei.

Als
**Anlage K 11**

übergeben wir ein Schliffbild der Verletzungsform gemäß Anlage K 5.
Das in Anlage K 11 oben dargestellte Bild zeigt den gesamten Halblei-
terkörper, der von Vergussmasse bedeckt ist. Das unten dargestellte Bild
zeigt eine Ausschnittsvergrößerung eines Bereichs um die rechte Kante
des Halbleiterkörpers.

**BAKER & MCKENZIE**

Die als Anlage K 5 vorgelegte und in der Schemazeichnung gemäß Anlage K 10 dargestellte LED ist ein lichtabstrahlendes Halbleiterbauelement (Merkmal 1). Tatsächlich ist das von der angegriffenen LED abgestrahlte Licht ein weißes Mischlicht. Darauf wird von den Beklagten schon durch den Buchstaben "W" in der Typenbezeichnung "CL-270WA-D-TS" hingewiesen.

Der Halbleiterkörper, der im Betrieb des Halbleiterbauelements elektromagnetische Strahlung aussendet, ist der in der Schemazeichnung mit der Bezugsziffer 2 gekennzeichnete Leuchtdiodenchip (Merkmal 2).

Dieser Leuchtdiodenchip besitzt zwei elektrische Anschlussbahnen (3,4), wobei auf eine der beiden Anschlussbahnen der Leuchtdiodenchip (2) aufgeklebt ist. Zwei vorderseitige Kontakte des Leuchtdiodenchips (2) sind mittels Bonddrähten mit den beiden Anschlussbahnen (3,4) elektrisch leitend verbunden, so dass auch Merkmal 3 verwirklicht wird.

Nach Merkmal 4 soll die LED ein Lumineszenzkonversionselement mit mindestens einem Leuchtstoff beinhalten. Bei der Verletzungsform wird das Lumineszenzkonversionselement gebildet aus dem Chipvergussmaterial (5), das Leuchtstoffpartikel enthält (6). Das Material der Leuchtstoffpartikel der Verletzungsform ist ein mit Seltenen Erden dotierter Granat der Formel $(Y,Gd)_3Al_5O_{12}$:Ce, was wir im Zusammenhang mit den Klageschutzrechten II näher erläutern werden. Das Chipvergussmaterial ist ein Epoxidharz, das im Klagegebrauchsmuster I als bevorzugtes Material vorgeschlagen wird.

**Beweis:**       Sachverständigengutachten.

Nach Merkmal 5 soll der Halbleiterkörper eine Halbleiterschichtenfolge aufweisen, die geeignet ist, im Betrieb des Halbleiterbauelements elektromagnetische Strahlung eines ersten Wellenlängenbereiches aus dem ultravioletten, blauen oder grünen Spektralbereich auszusenden. Auch

BAKER & M<sup>C</sup>KENZIE

dieses Merkmal ist erfüllt, da der Leuchtdiodenchip eine Schichtenfolge aus Galiumnitrid besitzt. Eine solche Schichtenfolge kann bekanntermaßen blaues oder grünes Licht emittieren. Im konkreten Fall haben die Untersuchungen der Klägerin ergeben, dass der LED-Chip im Betrieb blaues Licht abstrahlt.

**Beweis:**  1.   Spektralanalysen der LED der Beklagten, **Anlage K 12,**

           2.   Zeugnis des Herrn Beil, zu laden über die Klägerin,

           3.   Sachverständigengutachten.

Das vom LED-Chip ausgestrahlte blaue Licht erkennt man an dem ersten Peak in der Spektralkurve, der bei einer Wellenlänge von ca. 460 nm liegt. Gemäß der als

**Anlage K 13**

beigefügten Tabelle aus dem Lehrbuch der organischen Chemie von Prof. Walter ist Licht mit einer Wellenlänge von 460 nm blau.

Dieses blaue Licht aus dem ersten Wellenlängenbereich wird gemäß Merkmal 6 durch das Lumineszenzkonversionselement in Strahlung eines vom ersten verschiedenen, zweiten Wellenlängenbereichs umgewandelt. Die im Chipvergussmaterial (5) aufgefundenen Leuchtstoffpartikel (6) aus $(Y,Gd)_3Al_5O_{12}$:Ce wandeln einen Teil der vom Leuchtdiodenchip (2) ausgesandten Strahlung in gelbe Strahlung um. Dies erkennt man in der gemäß Anlage K 12 vorgelegten Spektralanalyse an dem zweiten Peak, der bei ca. 580 nm liegt. Das Licht dieser Wellenlänge ist die von den Leuchtstoffpartikeln emittierte Sekundärstrahlung.

**Beweis:**  1.   Zeugnis des Herrn Beil, zu laden über die Klägerin,

           2.   Sachverständigengutachten.

**BAKER & MᶜKENZIE**

Gelbe Strahlung weist einen von blauer Strahlung verschiedenen Wellenlängenbereich auf, so dass Merkmal 6 verwirklicht wird.

Dabei lässt das Lumineszenzkonversionselement zumindest einen Teil der elektromagnetischen Strahlung des ersten Wellenlängenbereiches (des blauen Lichts) hindurch, ohne diese in gelbe Strahlung umzuwandeln. Dies ergibt sich aus dem ersten Peak der gemäß Anlage K 12 vorgelegten Spektralanalyse, denn der erste Peak gibt nicht umgewandeltes blaues Licht wieder. Damit ist Merkmal 7 erfüllt.

Das von den Leuchtstoffpartikeln emittierte gelbe Licht wird durch den zweiten Peak in der Spektralanalyse gemäß Anlage K 12 nachgewiesen. Daraus folgt die Verwirklichung von Merkmal 8, da die LED insgesamt eine Mischung aus (blauer) Strahlung des ersten Wellenlängenbereichs sowie (gelber) Strahlung eines zweiten Wellenlängenbereichs abstrahlt.

Weiterhin enthält das Chipvergussmaterial (5) neben den Leuchtstoffpartikeln auch noch Siliziumdioxid-Partikel (7). Dies ergibt sich aus einer EDX-Analyse des Chip-Vergussmaterials.

**Beweis:**     EDX-Analyse des Chip-Vergussmaterials der Beklagten, in Kopie anbei als **Anlage K 14**.

Siliziumdioxid-Partikel (7) haben keine wellenlängen-konvertierende Eigenschaft, sondern streuen lediglich Lichtstrahlen, die auf sie auftreffen. Sie sind somit lichtstreuende Partikel gemäß Merkmal 9 der Merkmalsanalyse.

**Beweis:**  1.    Zeugnis des Herrn Dr. Strauß

2.    Sachverständigengutachten

Die mit Seltenen Erden dotierten Granate der Formel $(Y,Gd)_3Al_5O_{12}:Ce$ sind Leuchtstoffe aus der Gruppe der Phosphore (Merkmal 10). Da dieser

**BAKER & McKENZIE**

anorganische Leuchtstoff in einer Epoxidharz-Matrix eingebettet ist, liegt auch Merkmal 11 der Merkmalsanalyse vor.

**Beweis:**  1.  Zeugnis des Herrn Dr. Strauß
   2.  Sachverständigengutachten

3.  <u>Verletzung der Schutzansprüche 3, 6, 8, 10 und 15 des Klagegebrauchs-musters I, jeweils in Verbindung mit den Merkmalen der Ansprüche 1, 14 und 17</u>

Da die Verletzungsform alle Merkmale des Schutzanspruchs 17 verwirklicht, braucht auf den insbesondere Teil des Klageantrags eigentlich nicht näher eingegangen zu werden. Rein vorsorglich legen wir nachfolgend dar, dass die Verletzungsform auch von den weiteren Merkmalen der Schutzansprüche 3, 6, 8, 10 und 15 Gebrauch macht.

Nach Schutzanspruch 3 soll das Lumineszenzkonversionselement in Hauptabstrahlrichtung des Halbleiterbauelements gesehen im Wesentlichen dem Halbleiterkörper nachgeordnet sein. Das Lumineszenzkonversionselement wird bei der angegriffenen LED durch das Chipvergussmaterial (5) mit den Leuchtstoffpartikeln (6) und den streuenden Partikeln (7) gebildet. Es ist beim Verletzungsobjekt auf dem Leuchtdiodenchip (2) aufgebracht und demnach dem Leuchtdiodenchip in Hauptabstrahlrichtung des LED-Bauelements nachgeordnet.

Gemäß Schutzanspruch 6 soll der zweite Wellenlängenbereich zumindest teilweise größere Wellenlängen λ aufweisen als der erste Wellenlängenbereich. Das im ersten Wellenlängenbereich liegende blaue Licht liegt in einem Bereich um die Peakwellenlänge von 460 nm. Das von den Leuchtstoffpartikeln emittierte Licht liegt dagegen in einem Wellenlängenbereich um die Peakwellenlänge von ca. 580 nm (siehe Spektralanalyse gemäß Anlage K 12).

BAKER & MCKENZIE

Auch Schutzanspruch 8 ist verwirklicht, da blaues und gelbes Licht kom-
plementäre Farben sind, um weißes Licht zu erzeugen. Dass dem so ist,
ergibt sich schon aus der Tatsache, das die angegriffene LED weißes
Licht abstrahlt. Es ergibt sich aber auch dem als Anlage K 8 vorgelegten
CIE-Diagramm.

Gemäß Schutzanspruch 10 soll die vom Halbleiterkörper ausgesandte
Strahlung eine Wellenlänge von $\lambda \leq 520$ nm aufweisen. Gemäß der als
Anlage K 12 vorgelegten Spektralkurve liegt die vom LED-Chip ausge-
sandte Strahlung im Bereich der Peakwellenlänge von ca. 460 nm.

Schließlich ist der anorganische Leuchtstoff aus der Gruppe der Cer-
dotierten Granate, so dass auch Schutzanspruch 15 erfüllt ist.

IV. **Verletzung des Klagegebrauchmusters II und des Klagepatents (im
Folgenden „Klageschutzrechte II")**

1. Die Lehre der Klageschutzrechte II

Das oben behandelte Klagegebrauchsmuster I schlägt den Einsatz eines
Lumineszenzkonversionselements vor, das bevorzugt aus transparentem
Epoxidharz besteht und mit Leuchtstoffpartikeln versetzt ist. Es handelt
sich dabei um eine Vergussmasse. Die den Klageschutzrechten II zu
Grunde liegende Aufgabe besteht darin, das in Form der wellenlängen-
konvertierenden Vergussmasse vorliegende Lumineszenzkonversionse-
lement derart weiterzuentwickeln, dass es homogenes mischfarbiges
Licht abstrahlt und eine Massenfertigung mit vertretbarem technischen
Aufwand mit weitestgehend reproduzierbaren Bauelementcharakteristi-
ken ermöglicht (vgl. Anlage K 2a, Seite 2, Zeilen 21 bis 28 und Anlage K
2b, Absatz [0007]).

Diese Aufgabe wird erfindungsgemäß dadurch gelöst, dass man der Ver-

23

**BAKER & McKENZIE**

gussmasse Leuchtstoffpigmente einer bestimmten chemischen und physikalischen Konsistenz beisetzt.

Was die chemische Konsistenz anbelangt, so handelt es sich bei den gemäß den Klageschutzrechten II vorgeschlagenen Leuchtstoffpigmenten um anorganische Leuchtstoffmaterialien, die sich besonders für den Einsatz bei LED-Chips eignen, die ultraviolettes, blaues und/oder grünes Licht emittieren. Diese anorganischen Leuchtstoffpigmente weisen eine kristalline Granat-Struktur auf. Das Vorliegen einer Granat-Struktur wird in den Klageschutzrechten II mit der Formel $A_3B_5X_{12}$ zum Ausdruck gebracht. Dies ist die allgemein übliche Formel einer Granatstruktur. Die Leuchtstoffe mit einer solchen Granat-Struktur sind vorteilhaft, da diese Struktur in der Vergussmasse nicht verloren geht, d.h. die Leuchtstoffpigmente verteilen sich in der Vergussmasse, ohne sich zu lösen.

Die Leuchtstoffe sind gezielt mit Atomen der Elementgruppe „Seltene Erden" verunreinigt (dotiert), um durch diese Dotierung mit Seltenen Erden lumineszierende Zentren zu erzeugen. Dabei verdrängen die Selten Erd-Atome in geringem Umfang die Atome des zu Grunde liegenden Materials von ihren Gitterplätzen. Wenn diese dann durch die elektromagnetische Bestrahlung des LED-Chips (mit Primärstrahlung) angeregt werden, erzeugen sie die erfindungsgemäße Sekundärstrahlung. Besonders bevorzugt eingesetzt wird als Dotierungsmittel Cer, ein zu der Gruppe der Lanthanoide gehörendes Element aus der Gruppe der Seltenen Erden.

In Bezug auf die physikalische Struktur der Leuchtstoffpigmente schlägt die Lehre der Klageschutzrechte II einen bestimmten mittleren Korndurchmesser und eine bestimmte Korngröße vor. Diese sind für die Konvertierung der Wellenlänge der Primärstrahlung von Bedeutung, weil sie die Effizienz der Lumineszenz, die Homogenität des vom Bauelement abgestrahlten (aus Primär- und Sekundärstrahlung bestehenden) mischfarbigen Lichtes sowie die Verteilung der Leuchtstoffpigmente um den

BAKER & MCKENZIE

LED-Chip prägen. Konkret lehren die Klageschutzrechte II in Bezug auf die physikalische Struktur der Leuchtstoffpigmente in dem Lumineszenzkonversionselement, dass diese Korngrößen ≤ 20 µm und einen mittleren Korndurchmesser $d_{50} \leq 5$ µm aufzuweisen haben. Die Größe $d_{50} \leq 5$ µm ist ein statistischer Wert. Er besagt, dass statistisch gesehen der Korndurchmesser der Hälfte aller eingesetzten Leuchtstoffpigmente ($d_{50}$) kleiner/gleich 5 µm sein soll.

Gegenstand der Klage sind lichtabstrahlende Halbleiterbauelemente, die mit einer Vergussmasse nach Anspruch 1 der Klageschutzrechte II hergestellt sind. Ausgehend von dem Schutzanspruch 21 des Klagepatents (bzw. Anspruch 13 des Klagegebrauchsmusters II) ergibt sich für die unter Schutz gestellte Vorrichtung folgende Merkmalsanalyse:

1.  lichtabstrahlendes Halbleiterbauelement

2.  mit einer wellenlängenkonvertierenden Vergussmasse

3.  auf der Basis eines transparenten Epoxidharzes,

4.  für ein elektrolumineszierendes Bauelement mit einem ultraviolettes, blaues oder grünes Licht aussendenden Körper,

5.  im transparenten Epoxidharz ist ein anorganisches Leuchtstoffpigmentpulver aus der Gruppe der Phosphore mit der allgemeinen Formel $A_3B_5X_{12}$:M dispergiert

6.  die Leuchtstoffpigmente weisen Korngrößen ≤ 20 µm und einen mittleren Korndurchmesser $d_{50} \leq 5$ µm auf, und

7.  mit einem Halbleiterkörper, der eine Halbleiterschichtenfolge aufweist, die geeignet ist, im Betrieb des Halbleiterbauelements elektro-

**BAKER & McKENZIE**

magnetische Strahlung aus dem ultravioletten, blauen und/oder grünen Spektralbereich auszusenden,

8. die Leuchtstoffpigmente wandeln einen Teil der aus diesem Spektralbereich stammenden Strahlung in Strahlung mit größerer Wellenlänge um, derart, dass das Halbleiterbauelement Mischstrahlung, insbesondere mischfarbiges Licht, bestehend aus dieser Strahlung aus dem ultravioletten, blauen und/oder grünen Spektralbereich aussendet .

Die vorstehend wiedergegebene Merkmalsanalyse ist zur Arbeitserleichterung noch einmal gesondert – für das Gericht dreifach - als

**Anlage K 15**

überreicht.

Eine bevorzugte Ausführungsform und Weiterbildung, die für den vorliegenden Fall von Interesse ist, findet sich in Schutzanspruch 22 des Klagepatents bzw. Schutzanspruch 14 des Klagegebrauchsmusters II.

2. <u>Die Verletzung des Schutzanspruchs 21 des Klagepatents bzw Schutzanspruch 13 des Klagegebrauchsmusters II</u>

Die weißes Licht aussendenden LED der Beklagten machen von allen Merkmalen des Schutzanspruches 21 des Klagepatents bzw. Schutzanspruch 13 des Klagegebrauchsmusters II wortlautgemäß Gebrauch.

Die LED der Beklagten ist ein lichtabstrahlendes Halbleiterbauelement (Merkmal 1).

Die wellenlängenkonvertierende Vergussmasse gemäß Merkmal 2 ist das in der Schemazeichnung (Anlage K10) mit der Bezugsziffer 5 versehene Chipvergussmaterial aus Epoxidharz, das Leuchtstoffpartikel (6) enthält.

26

**BAKER & MCKENZIE**

Wie bereits oben dargelegt, absorbieren die Leuchtstoffpartikel einen Teil der Strahlung des LED-Chips (2) und re-emittieren längerwellige Strahlung.

Das Chipvergussmaterial besteht aus Epoxidharz, so dass auch Merkmal 3 verwirklicht wird.

Nach Merkmal 4 soll das Vergussmaterial benutzt werden für ein elektrolumineszierendes Bauelement mit einem Körper, der ultraviolettes, blaues oder grünes Licht aussendet. Der Körper ist der in Anlage K 10 mit dem Bezugszeichen 2 versehene LED-Chip. Dieser strahlt konkret blaues Licht aus. Dies ergibt sich aus der Spektralanalyse gemäß Anlage K 12. Der dort bei einer Wellenlänge von 460 nm erkennbare Peak zeigt das Intensitätsmaximum der vom LED-Chip ausgestrahlten und durch das Lumineszenzkonversionselement hindurchtretenden Primärstrahlung. Merkmal 4 wird somit verwirklicht.

Nach Merkmal 5 soll der benutzte Leuchtstoff ein anorganischer Leuchtstoff aus der Gruppe der Phosphore mit der allgemeinen Formel $A_3B_5X_{12}$:M sein. Wie oben bereits erläutert steht die Formel $A_3B_5X_{12}$ für eine Granatstruktur. Durch das Zeichen „:M" wird eine Dotierung zum Ausdruck gebracht. Die Analysen der Klägerin haben ergeben, dass der in der angegriffenen LED verwandte Leuchtstoff ein sogenannter Yttrium-Gadolinium-Aluminium-Granat der Formel $(Y,Gd)_3Al_5O_{12}$ ist. Er ist dotiert mit Cer. Der Leuchtstoff mit der Formel $(Y,Gd)_3Al_5O_{12}$:Ce ist ein anorganisches Material. Merkmal 5 wird somit verwirklicht.

Weiterhin verwirklicht die Verletzungsform auch Merkmal 6. Die Klägerin hat die Korngröße der Leuchtstoffpartikel in dem Epoxidharz mit einem Computerprogramm (dem SPIP Programm) sowie manuell vermessen. Das SPIP-Programm ist eine Software der Firma Image Metrology. Bei den Untersuchungen hat die Klägerin Schnitte durch zehn LED, die das Chipvergussmaterial mit den Leuchtstoffpartikeln beinhalten, vorge-

BAKER & MCKENZIE

nommen und jeweils die einzelnen Partikel vermessen. Die Messungen haben ergeben, dass die zehn untersuchten LED dem Merkmal 6 entsprechende Partikelgrößen aufweisen. Die Ergebnisse der Vermessung einer der LED hat die Klägerin in das als

**Anlage K 16**

beigefügte Diagramm eingetragen. Daraus ersieht man, dass kein Partikel eine Korngröße hatte, die größer 20 μm war. Insgesamt wurden 1496 Leuchtstoffpartikel vermessen. Mehr als 1200 Leuchtstoffpartikel davon weisen einen Korndurchmesser von unter 5 μm auf. Daraus ergibt sich alleine schon, dass der mittlere Korndurchmesser $d_{50}$(=Grenze, unterhalb der 50 % aller Partikel liegen) unterhalb von 5 μm liegen muss. Der aus dieser Untersuchung ermittelte mittlere Korndurchmesser $d_{50}$ der Leuchtstoffpartikel liegt bei ungefähr 2,9 μm und somit weit unter 5 μm lag.

**Beweis:** 1.  Zeugnis des Herrn Dr. Strauß, b.b.,

2.  Sachverständigengutachten.

Herr Dr. Strauß hat nach diesem Verfahren, wie oben dargelegt, insgesamt 10 LED der Beklagten analysiert. Die Analysen aller 10 LED ergaben die gleichen Ergebnisse.

**Beweis:**     Zeugnis des Herrn Dr. Strauß, b.b.,

Nach Merkmal 7 soll die LED einen Halbleiterkörper mit einer Halbleiterschichtenfolge aufweisen, die geeignet ist, im Betrieb des Halbleiterbauelements elektromagnetische Strahlung aus dem ultravioletten, blauen und/oder grünen Spektralbereich auszusenden. Auch dieses Merkmal liegt vor, da die angegriffene LED eine Halbleiterschichtenfolge aufweist, die im Betrieb des Halbleiterbauelements elektromagnetische Strahlung aus dem blauen Spektralbereich aussendet (vgl. der in der Spektralanalyse gemäß K 12 bei ca. 460 nm liegende erste Peak).

**BAKER & McKENZIE**

Schließlich ist Merkmal 8 erfüllt, denn die Leuchtstoffpigmente wandeln einen Teil der aus diesem Spektralbereich stammenden Strahlung in Strahlung mit größerer Wellenlänge um, derart, dass das Halbleiterbauelement Mischstrahlung, insbesondere mischfarbiges Licht, bestehend aus dieser Strahlung aus dem ultravioletten, blauen und/oder grünen Spektralbereich aussendet. Die von den Leuchtstoffpigmenten umgewandelte und emittierte Strahlung größerer Wellenlänge ist die gelbe Strahlung, die in der Spektralanalyse gemäß Anlage K 12 durch den Peak bei der Wellenlänge von ca. 580 nm angezeigt wurde.

3.    Die Verletzung des Schutzanspruchs 22 des Klagepatents bzw. des Schutzanspruchs 14 des Klagegebrauchsmusters II

Nach Schutzanspruch 22 des Klagepatents (Schutzanspruch 14 des Klagegebrauchsmusters II) soll die Vergussmasse einen Teil des Halbleiterkörpers umschließen. Der Halbleiterkörper ist der in der Schemazeichnung gemäß Anlage K 10 mit der Bezugsziffer 2 gekennzeichnete Leuchtdiodenchip. Dieser Leuchtdiodenchip wird von der Vergussmasse umschlossen, was man sowohl anhand der Schemazeichnung als auch aus dem Schliffbild gemäß Anlage K 11 erkennen kann.

**V.    Die Verletzung des Klagegebrauchsmusters III**

1.    Das Klagegebrauchmuster III

Alle Klageschutzrechte lehren die Benutzung eines Lumineszenzkonversionselements, bei dem Mischlicht dadurch erzeugt wird, dass der Leuchtstoff einen Teil der Primärstrahlung absorbiert, in Strahlung eines zweiten Wellenlängenbereiches (Sekundärstrahlung) umwandelt und diese Sekundärstrahlung wieder emittiert. Das von einem Betrachter wahrgenommene Licht des gesamten Halbleiterbauelements setzt sich somit zusammen aus der vom LED-Chip ausgestrahlten, durch das Lumines-

BAKER & McKENZIE

zenzkonversionselement durchgehenden, aber nicht konvertierten Primärstrahlung und der von den Leuchtstoffpartikeln emittierten Sekundärstrahlung (also konvertierter Primärstrahlung), entstanden aufgrund der Anregung durch in das Lumineszenzkonversionselement eindringende und vom Leuchtstoff absorbierte Primärstrahlung.

Das Klagegebrauchsmuster III befasst sich mit der Aufgabe, ein gattungsgemäßes Halbleiterbauelement bereitzustellen, das homogenes Mischlicht erzeugt. Dies ist dann der Fall, wenn das von einem Betrachter wahrgenommene Licht in allen Richtungen als Licht derselben (Misch-) Farbe wahrgenommen wird. Das Klagegebrauchsmuster III lehrt insbesondere, wie das Lumineszenzkonversionselement beschaffen sein muss, um diese Aufgabe zu erfüllen.

Erfindungsgemäß offenbart das Klagegebrauchsmuster III die Erkenntnis, dass es für ein homogenes Mischlicht darauf ankommt, dass die optische Weglänge der von dem LED-Chip ausgesandten und durch das Lumineszenzkonversionselement hindurch tretenden Primärstrahlung für alle Strahlungsrichtungen des Halbleiterbauelements annähernd gleich groß ist. Wird diese Lehre befolgt, dann ist in allen Strahlungsrichtungen die Wahrscheinlichkeit, dass die Primärstrahlung von einem Leuchtstoffpartikel absorbiert und in Sekundärstrahlung umgewandelt wird, annähernd gleich groß. In allen Strahlungsrichtungen wird somit ein gleich großer Anteil der Primärstrahlung in Sekundärstrahlung umgewandelt mit der Folge, dass das von dem Halbleiterbauelement insgesamt abgestrahlte und von einem Betrachter wahrgenommene (Misch-) Licht homogen ist. Das von einem Betrachter wahrgenommene (Misch-) Licht setzt sich aus einer Fülle von einzelnen Strahlen zusammen. Für die Frage, welche optische Weglänge das von einem Betrachter wahrgenommene (Misch-) Licht zurückgelegt hat, kommt es auf eine statistische Betrachtung unter Einbeziehung aller Strahlen an, die ein Betrachter in der jeweiligen Strahlungsrichtung wahrnimmt.

BAKER & MCKENZIE

Die optische Weglänge dieser Primärstrahlung kann auf unterschiedliche Art und Weise beeinflusst werden, was anhand der als

**Anlage K 17**

beigefügten Zeichnung näher erläutert wird. Die von einem LED-Chip ausgesandte Primärstrahlung tritt nicht auf direktem Weg aus dem Lumineszenzkonversionselement heraus, sondern wird innerhalb des Lumineszenzkonversionselements vielfach gestreut. Diese Streuung kann durch sogenannte lichtstreuende Partikel (Diffusoren), die Gegenstand des Klagegebrauchsmusters I sind, gezielt bewirkt werden. Auch ohne den Einsatz solcher Diffusoren werden die vom LED-Chip ausgesandten Strahlen jedoch gestreut, da nicht alle auf einen Leuchtstoffpartikel auftreffenden Primärstrahlen von dem Leuchtstoffpartikel absorbiert und als Sekundärstrahlen wieder emittiert werden, sondern ein Teil dieser auf Leuchtstoffpartikel auftreffenden Primärstrahlen lediglich umgelenkt (gestreut) wird. Das Klagegebrauchsmuster III lehrt nun, dass ein annähernd gleicher optischer Weg der nichtkonvertierten Primärstrahlung beispielsweise durch eine konstante Dicke der Lumineszenzkonversionsschicht erzielt werden kann (vgl. Anlage K3, Seite 4, Zeilen 25ff.). Es lehrt aber auch, dass die Dicke der Lumineszenzkonversionsschicht keine absolute Größe ist, sondern dass die optische Weglänge der Primärstrahlung auch von der Verteilung der Leuchtstoffpartikel abhängt. Eine etwaige ungleichmäßige Dicke der Lumineszenzkonversionsschicht kann erfindungsgemäß auch durch eine gezielt inhomogene Verteilung der Leuchtstoffpartikel innerhalb der Lumineszenzkonversionsschicht ausgeglichen werden (vgl. Anlage K3, Seite 6, Zeilen 21ff.). Ein Fachmann entnimmt somit dem Klagegebrauchsmuster III die Anweisung zum technischen Handeln, durch eine geeignete Wahl der Dicke der Lumineszenzkonversionsschicht und der Konzentration der Leuchtstoffpartikel sicherzustellen, dass die optische Weglänge der vom LED-Chip ausgesandten Primärstrahlung annähernd gleich groß ist. Wird diese Lehre befolgt, dann

31

BAKER & MᶜKENZIE

wird die dem Klagegebrauchsmuster III zugrunde liegende Aufgabe erfüllt, homogenes (Misch-) Licht zu erzeugen.

Ausschlaggebend dafür, dass der Weißton in verschiedenen Strahlungsrichtungen des Bauelements möglichst gleich ist, ist die Umsetzung der erfindungsgemäßen technischen Lehre, dass das Primärlicht, das das Lumineszenzkonversionselement durchdringt, für alle Strahlungsrichtungen des LED-Bauelements durch das Lumineszenzkonversionselement hindurch die gleiche optische Weglänge aufweist. Dann ist nämlich die Wahrscheinlichkeit, dass Primärstrahlung auf dem Weg durch das Lumineszenzkonversionselement in Sekundärstrahlung umgewandelt wird, für alle Strahlungsrichtungen gleich groß. Denn je größer die Weglänge der Primärstrahlung durch das Lumineszenzkonversionselement, umso mehr von dieser Primärstrahlung wird auf diesem Weg in Sekundärstrahlung umgewandelt und umso weniger der Primärstrahlung kommt folglich unkonvertiert durch das Lumineszenzkonversionselement hindurch. Wären die Weglängen in verschiedenen Strahlungsrichtungen des Bauelements unterschiedlich, so hätte folglich auch das in den verschiedenen Strahlungsrichtungen abgestrahlte Mischlicht unterschiedliche Farbtöne. Zur Veranschaulichung des vorangehend geschilderten Sachverhalts ist als

**Anlage K 18**

eine Zeichnung beigefügt. In dieser sind zur Darstellung unterschiedlicher Strahlungsrichtungen zwei Beobachtungsorte A und B eingetragen. Wäre die Weglänge des blauen Primärlichtes, das am Beobachtungsort A ankommt, durch das Lumineszenzkonversionselement hindurch größer als die Weglänge des blauen Primärlichtes, das am Beobachtungsort B ankommt, so wäre der Gelbanteil des Gesamtlichtes am Beobachtungsort A größer als am Beobachtungsort B. Am Beobachtungsort A wäre dann ein anderer Farbton zu sehen als am Beobachtungsort B.

BAKER & McKENZIE

Ausgehend von Schutzanspruch 17 des Klagegebrauchsmusters III ergibt sich für die unter Schutz gestellte Vorrichtung folgende Merkmalsanalyse:

1. Lichtabstrahlendes Halbleiterbauelement,

2. mit einem Halbleiterkörper, der im Betrieb des Halbleiterbauelements elektromagnetische Strahlung aussendet,

3. mit mindestens einem ersten und mindestens einem zweiten elektrischen Anschluss, die mit dem Halbleiterkörper elektrisch leitend verbunden sind, und

4. mit einem Lumineszenzkonversionselement, das mindestens einen Leuchtstoff aufweist,

5. der Halbleiterkörper weist eine Halbleiterschichtenfolge auf, die geeignet ist, im Betrieb des Halbleiterbauelements elektromagnetische Strahlung eines ersten Wellenlängenbereiches aus dem ultravioletten, blauen und/oder grünen Spektralbereich auszusenden,

6. das Lumineszenzkonversionselement wandelt eine aus dem ersten Wellenlängenbereich stammende Strahlung in Strahlung eines vom ersten verschiedenen zweiten Wellenlängenbereiches um

7. das Lumineszenzkonversionselement lässt zumindest einen Teil der elektromagnetischen Strahlung des ersten Wellenlängenbereiches hindurch,

8. das Halbleiterbauelement sendet Mischstrahlung, bestehend aus Strahlung des ersten Wellenlängenbereiches und Strahlung des zweiten Wellenlängenbereiches aus, und

33

BAKER & McKENZIE

9. eine Weglänge der von dem Halbleiterkörper ausgesandten elektromagnetischen Strahlung des ersten Wellenlängenbereiches durch das Lumineszenzkonversionselement hindurch ist für alle Strahlungsrichtungen näherungsweise gleich groß

10. das Lumineszenzkonversionselement weist mindestens einen anorganischen Leuchtstoff aus der Gruppe der Phosphore auf

11. der anorganische Leuchtstoff ist in einer Epoxidharz-Matrix eingebettet.

Die vorstehend wiedergegebene Merkmalsanalyse ist zur Arbeitserleichterung noch einmal gesondert – für das Gericht dreifach - als

**Anlage K 19**

überreicht.

Bevorzugte Ausführungsformen und Weiterbildungen, die für den vorliegenden Fall von Interesse sind, finden sich in den Schutzansprüchen 3, 6, 8, 10, 15, und 22.

2.    Die Verletzung des Schutzanspruchs 17 des Klagegebrauchsmusters III

Die LED der Beklagten machen auch von allen Merkmalen des Schutzanspruches 17 des Klagegebrauchsmusters III wortlautgemäß Gebrauch.

Zur Vermeidung von Wiederholungen verweisen wir auf die Verletzungsanalyse zum Klagegebrauchsmuster I. Die Merkmale 1 bis 8 des Klagegebrauchsmusters III sind identisch mit den Merkmalen des Klagegebrauchsmusters I, so dass sich deren Verletzung aus den oben dargelegten Gründen ergibt. Gleiches gilt für die Merkmale 10 und 11.

**BAKER & McKENZIE**

Nach Merkmal 9 des Klagegebrauchsmusters III soll die Weglänge der
von dem Halbleiterkörper ausgesandten elektromagnetischen Strahlung
des ersten Wellenlängenbereiches (die Primärstrahlung) durch das Lumi-
neszenzkonversionselement hindurch für alle Strahlungsrichtungen nähe-
rungsweise gleich groß sein. Die Klägerin hat den jeweiligen Farbort (so-
genannter Chromaticity Point) aus allen Betrachtungsrichtungen einer
LED ermittelt.

**Beweis:**      Tabelle der Farborte einer LED der Beklagten, in Kopie
                 anbei als **Anlage K 20.**

Aus der vorgelegten Tabelle ergibt sich, dass der Farbort des wahrge-
nommenen Lichts über den gesamten Bereich einer LED auf der soge-
nannten CX-Koordinate des CIE-Diagramms (vgl. Anlage K 6) zwischen
0,309 und 0,326 sowie auf der CY-Koordinate zwischen 0,314 und 0,338
liegt. Aus dem als Anlage K 8 vorgelegten CIE-Diagramm ergibt sich,
dass es sich dabei um weißes Licht handelt. Dieses weiße Licht ist auf-
grund der dicht beieinander liegenden Farborte der wahrnehmbaren
Mischstrahlung auch homogen. Die Beklagte zu 1 selbst definiert homo-
genes weißes Licht als Licht, bei dem die Farborte der über den gesamten
Bereich einer LED wahrnehmbaren Mischstrahlung in einem bestimmten
Bereich liegen, der durch mehrere Koordinaten festgelegt ist und in dem
als

**Anlage K 21**

vorgelegten Diagramm deutlich gemacht wurde. Der als homogener Be-
reich definierte Bereich ist dort eingegrenzt. Die von der Klägerin gemes-
senen Farborte der angegriffenen LED, gekennzeichnet durch die Drei-
ecke und Quadrate, liegen innerhalb dieses eingegrenzten Bereichs. Das
von der angegriffenen LED der Beklagten abgestrahlte weiße Mischlicht
ist daher homogen.

**Beweis:**      Sachverständigengutachten

**BAKER & MCKENZIE**

Bedingung dafür, dass das Licht als homogenes Licht wahrgenommen wird, ist, dass die blaue Strahlung statistisch gesehen in allen Richtungen mit der gleichen Wahrscheinlichkeit in gelbes Licht umgewandelt wird. Daraus folgt im Umkehrschluss, dass mit der gleichen Wahrscheinlichkeit die vom LED-Chip ausgestrahlte Primärstrahlung unkonvertiert als blaues Licht durch das Lumineszenzkonversionselement hindurchgeht. Dies ist nur dann gewährleistet, wenn die optischen Weglängen der blauen Strahlung innerhalb des Lumineszenzkonversionselements statistisch gesehen für alle Strahlungsrichtungen näherungsweise gleich groß sind. Andernfalls würden in unterschiedlichen Richtungen unterschiedliche Mengen der blauen Strahlung in gelbe Strahlung umgewandelt. Je nach Betrachtungswinkel würde die vom Betrachter wahrgenommene (Misch-) Strahlung etwas gelber oder etwas blauer aussehen. Da dies nicht der Fall ist, muss auch Merkmal 9 bei dem angegriffenen LED verwirklicht sein.

**Beweis:**       Sachverständigengutachten.

3.   Die Verletzung der Schutzansprüche 3, 6, 8, 10,15 und 22 des Klage-
     gebrauchmusters III

Darüber hinaus macht die Verletzungsform auch von den zusätzlichen Merkmalen der Schutzansprüche 3, 6, 8, 10, 15 und 22 Gebrauch.

Nach Schutzanspruch 3 des Klagegebrauchsmusters III soll das Lumines-zenzkonversionselement in Hauptabstrahlrichtung des Halbleiterbauele-ments gesehen im Wesentlichen dem Halbleiterkörper nachgeordnet sein. Dass dem so ist, haben wir bereits oben auf Seite 19 in Bezug auf das Klagegebrauchsmuster I dargelegt.

Schutzanspruch 6 ist ebenfalls verwirklicht, da der zweite Wellenlängen-bereich zumindest teilweise größere Wellenlängen $\lambda$ aufweist, als der ers-te Wellenlängenbereich. Die Sekundärstrahlung ist gelbes Licht in einem

BAKER & M<sup>c</sup>KENZIE

Wellenlängenbereich um die Peakwellenlänge von 580 nm. Der erste Wellenlängenbereich des blauen Lichts liegt dagegen bei der Peakwellenlänge von 460 nm.

Blaues und gelbes Licht liegen in zueinander komplementärfarbigen Spektralbereichen, so dass weißes Licht erzeugt wird (Schutzanspruch 8).

Gleichzeitig wird Schutzanspruch 10 verwirklicht, da die vom Halbleiterkörper ausgesandte Primärstrahlung bei einer Wellenlänge von 460 nm liegt, und damit bei $\lambda \leq 520$ nm ein Intensitätsmaximum aufweist.

Das Lumineszenzkonversionselement weist mindestens einen anorganischen Leuchtstoff aus der Gruppe der Ce-dotierten Granate auf, nämlich einen sogenannten Yttrium-Gadolinium-Aluminium-Granat der Formel $(Y,Gd)_3Al_5O_{12}$:Ce. Daraus folgt die Verwirklichung von Schutzanspruch 15.

Schließlich enthält das Lumineszenzkonversionselement auch lichtstreuende Partikel, nämlich Siliziumdioxid-Partikel. Schutzanspruch 22 wird folglich auch verletzt.

## VI. Rechtliche Würdigung

Die geltend gemachten Unterlassungsansprüche sind gemäß § 24 Abs. 1, 11 Abs. 1 Satz 2 GebMG bzw. § 139 Abs. 1, 14 PatG begründet. Der geltend gemachte Schadensersatzanspruch folgt aus § 24 Abs. 2 GebMG bzw. § 139 Abs. 2 PatG. Ohne nähere Kenntnis vom Umfang der Verletzungshandlungen kann die Klägerin die Höhe ihres Schadensersatzanspruches nicht beziffern. Ihr steht daher der geltend gemachte Auskunfts- und Rechnungslegungsanspruch gemäß § 24b GebMG bzw. § 140b PatG zu. Der Vernichtungsanspruch folgt aus § 24a GebMG bzw. § 140a PatG. Der in Bezug auf das Klagepatent geltend gemachte Entschädigungsanspruch folgt aus § 33 PatG.

**BAKER & MᶜKENZIE**

Die Beklagten bieten die streitgegenständlichen LED deutschlandweit an, so dass das angerufene Gericht auch zuständig ist.

Der Umsatz der Klägerin mit LED liegt in mehrstelliger Millionenhöhe. Wir halten daher einen Streitwert von EUR 5 Mio. für angemessen.

Wir zeigen an, dass auf Seiten der Klägerin die Patentanwälte der Epping Hermann Fischer Patentanwaltsgesellschaft mbH, Ridlerstrasse 55, 80339 München, mitwirken.

Dr. Günter Pickrahn