IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZEN ELECTRONICS COMPANY, LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 1:05-cv-01560-ESH |
| OSRAM GMBH | |
| and | |
| OSRAM OPTO SEMICONDUCTORS GMBH, | |
| Defendants. | |

**REPLY TO PLAINTIFF'S OPPOSITION TO OSRAM GmbH AND OSRAM OPTO SEMICONDUCTORS GmbH'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.    SUMMARY OF THE REPLY ........................................................................1

II.   REPLY ....................................................................................................4

 A.  This Court Should Reject Citizen's Invitation To Rewrite The
  Clear Law On *Res Judicata* Which Bars Citizen From Re-
  Litigating Subject Matter Jurisdiction ........................................4

  1.  The law on *res judicata* is clear, and acknowledged by
   Citizen, and Citizen cannot qualify for an exception...............4

  2.  Citizen invites this Court to rewrite the law on *res
   judicata* because Citizen does not believe it makes
   sense, but the law is sensible and Citizen cannot rewrite
   it to avoid the consequences of its own mistake ......................6

 B.  There Has Been No Substantive Change That Would Support
  Finding Jurisdiction Now ..........................................................10

  1.  Citizen's contention that OSRAM's responsive German
   suit creates jurisdiction is based on outdated law and
   tortured logic ...........................................................................11

  2.  Citizen misstates the content of OSRAM's press release
   reporting its responsive German suit to try to create a
   statement of intention to sue Citizen in the future ..................15

 C.  Even Assuming *Arguendo* That There Could Be Jurisdiction
  Here, This Court Should Decline To Exercise Jurisdiction To
  Further The Purpose Of The Declaratory Judgment Act And
  Sound Judicial Administration ..................................................17

III.  CONCLUSION......................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Akzona Inc. v. E.I. du Pont de Nemours & Co.*,
662 F. Supp. 603 (D. Del. 1987).........................................................................................14

*Arrowhead Indus. Water, Inc. v. Eccolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988)........................................................................................11, 12

*Citizen Electronics Co., Ltd. v. OSRAM GmbH and OSRAM Opto Semiconductors GmbH*,
377 F. Supp. 2d 149 (D.D.C. July 14, 2005) ..................................................... *passim*

*Confederate Memorial Ass'n v. Hines*,
995 F.2d 295 (D.C. Cir. 1993) .......................................................................................8, 9

***** *Dozier v. Ford Motor Co.*,
702 F.2d 1189 (D.C. Cir. 1983) ....................................................................... *passim*

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996).......................................................................17, 18, 19

*Ethicon, Inc. v. Am. Cyanamid Co.*,
369 F. Supp. 934 (D.N.J. 1973) .................................................................2, 11, 12

*Newdow v. Bush*,
391 F. Supp. 2d 95 (D.D.C. 2005) .............................................................4, 6, 10

*Shell Oil Co. v. Amoco Corp.*,
970 F.2d 885 (Fed. Cir. 1992)...............................................................................16

*Studex Corp. v. Blomdahl Med. Innovation AB*,
355 F. Supp. 2d 3 (D.D.C. 2004) ..........................................................................2, 13

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)...................................................................................................17

*Zambon Group S.p.A. v. Pfizer, Inc.*,
No. 03-5534, 2005 WL 1262938 (D.N.J. May 26, 2005)............................2, 12, 13, 14

**Other**

Fed. R. Evid. 408..........................................................................................................3

18 Moore's Federal Practice § 132.02[2][e] (3d ed.) ...................................... *passim*

ii

## I.    **SUMMARY OF THE REPLY**

This Court should dismiss this declaratory judgment action because Citizen's Opposition confirms that there is nothing new which would justify departing from this Court's earlier decision that there was no subject matter jurisdiction.[1]  Dismissal is warranted again in this second action for procedural, substantive, and policy reasons.

As a procedural matter, the doctrine of *res judicata* bars Citizen from re-litigating subject matter jurisdiction.  The D.C. Circuit made it very clear that *res judicata* applies unless the jurisdictional deficiency is cured by "*occurrences subsequent to the original dismissal.*"  *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983) (original emphasis).  Citizen's Opposition confirms that there has been no occurrence subsequent to the original dismissal that cures the jurisdictional deficiency.  All the events that Citizen contends support jurisdiction, except one, occurred well before the original dismissal.  The only event that has occurred since the dismissal is the completion of formal service of OSRAM's German complaint on Citizen in Japan, but Citizen admits service was in progress at the time of the original dismissal.  *See* Opp. at 8.  This is hardly a significant change in the facts and cannot support jurisdiction.

Citizen has no valid response to this procedural bar.  Citizen admits that the controlling facts must change significantly after an earlier dismissal to avoid *res judicata*:  "Whether issue preclusion applies therefore depends in part on whether the controlling facts have changed significantly since the earlier judgment."  Opp. at 13.  However, since there has been no such significant change in the controlling facts here, Citizen cannot meet this test and does not confront it.  Instead, Citizen avoids addressing the critical point that it is barred from re-litigating subject matter jurisdiction until the last few pages of its Opposition, and then argues that the

---

[1] "Opposition," abbreviated "Opp." herein, refers to Citizen's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss.

D.C. Circuit's clear (emphasized) requirement of "*occurrences subsequent to the original dismissal,*" 702 F.2d at 1192, should not be respected and that OSRAM's point that it should be followed is "absurd." Opp. at 23.

Furthermore, nothing substantive has changed that would support finding jurisdiction now. Citizen primarily relies on OSRAM's German suit, contending that it is an express threat of litigation that automatically creates a reasonable apprehension of imminent suit on OSRAM's U.S. patents in the United States. *See* Opp. at 14, 23. Under Citizen's logic, a patentee renders itself subject to declaratory judgment jurisdiction in the U.S. just by filing suit anywhere else in the world. This is logically and legally incorrect. The 1973 district court case that Citizen cites for this point, *Ethicon, Inc. v. Am. Cyanamid Co.*, 369 F. Supp. 934 (D.N.J. 1973), is not followed in that District or this one. Recent cases make clear that foreign litigation is just one factor to consider and may not support jurisdiction. *See, e.g., Zambon Group S.p.A. v. Pfizer, Inc.*, No. 03-5534, 2005 WL 1262938 at *4-5 (D.N.J. May 26, 2005) (finding no jurisdiction and, in the alternative, declining jurisdiction); *Studex Corp. v. Blomdahl Med. Innovation AB*, 355 F. Supp. 2d 3, 8-9 & 9 n.10 (D.D.C. 2004) (dismissing for lack of jurisdiction).

Here, OSRAM's German suit did not give Citizen an objectively reasonable apprehension of imminent suit in the U.S. OSRAM's German suit was provoked by Citizen's baseless declaratory judgment suit in the first place, and OSRAM has done nothing to indicate that it would escalate matters by also suing Citizen in the U.S. OSRAM has not taken any offensive action in the U.S. against Citizen, despite being sued by Citizen in the U.S. twice. While Citizen acknowledges that patentees often respond to declaratory judgment actions by

counterclaiming for infringement, (*see* Opp. at 15), OSRAM has not done this and has explicitly told Citizen that it should stop trying to create a U.S. legal issue. (Ex. 1.[2])

Moreover, even assuming *arguendo* that there could be jurisdiction here, this Court should exercise its broad discretion to decline jurisdiction to further the purpose of the Declaratory Judgment Act and sound judicial administration. The purpose of the Act is to protect a truly threatened party, not to aid a party such as Citizen that strikes first, without being under threat, and then claims that the response – here in a foreign country – supplies the threat needed for jurisdiction. This amounts to an exercise in circular reasoning and perverts the purpose of the Act by rewarding a party which was not entitled to its protection. It would undermine sound judicial administration by encouraging baseless declaratory judgment suits, in hope of provoking responses which could supply jurisdiction. The result would be that non-threatening patentees would be dragged into court and forced to litigate their patents against potential infringers whom they had not threatened in the first place. OSRAM made these points in its opening brief, and Citizen does not respond to them. Citizen has no valid response. This Court has unique, broad discretion to decline jurisdiction and, even assuming it could exist here, should decline to exercise jurisdiction.

---

[2] "Ex. _" refers to Ex. _ to the Declaration of Charles H. Sanders in Support of Defendants' Reply to Plaintiff's Opposition to OSRAM GmbH and OSRAM Opto Semiconductors GmbH's Motion to Dismiss, which accompanies this Reply. The Exhibit, which is a letter relating to the parties' settlement discussions, is admissible here. While Citizen refers to FED. R. EVID. 408 to suggest evidence relating to the parties' settlement discussions is not admissible here, *see* Opp. at 19 n.5, Citizen is incorrect. FED. R. EVID. 408 only prohibits using evidence of settlement discussions "to prove liability for or invalidity of the claim or its amount." Here evidence relating to the parties' settlement discussions is not being offered to prove liability or damages but rather to show the conduct of the parties, which bears on the jurisdictional issue.

## II.    REPLY

### A.    This Court Should Reject Citizen's Invitation To Rewrite The Clear Law On *Res Judicata* Which Bars Citizen From Re-Litigating Subject Matter Jurisdiction

#### 1.    The law on *res judicata* is clear, and acknowledged by Citizen, and Citizen cannot qualify for an exception

The law in this Circuit is crystal clear that only "*occurrences subsequent to the original dismissal*" can cure a jurisdictional deficiency that resulted in dismissal. *Dozier*, 702 F.2d at 1192 (original emphasis); *see also id.* at 1193 n.4 ("proper application of *res judicata* should require some demonstration that the plaintiff is relying upon a new fact or occurrence, and not merely relying upon those that existed at the time of the first dismissal"); *see also Newdow v. Bush*, 391 F. Supp. 2d 95, 99-100 (D.D.C. 2005) ("the jurisdictional deficiency from the prior litigation must be 'remedied by *occurrences subsequent to the original dismissal.*'") (original emphasis, quoting *Dozier*).[3]  The law is unmistakable on this point:  a party seeking to avoid the *res judicata* effect of a dismissal must point to new occurrences subsequent to the original dismissal and cannot merely rely on facts that exist at the time of the dismissal. *See Dozier*, 792 F.2d at 1193 n.4.

Even Citizen admits that, to avoid preclusion, the controlling facts must have changed significantly since the earlier judgment:  "Whether issue preclusion applies therefore depends in part on whether the controlling facts have changed significantly since the earlier judgment." Opp. at 13.  Citizen cites 18 MOORE'S FEDERAL PRACTICE § 132.02[2][e] (3d ed.) for this point, which states:

> The basic rule, that issue preclusion applies only if the issue in the prior litigation is identical to the issue in the subsequent litigation, entails the corollary that a difference in pertinent facts, sufficient to substantially change the issue, renders

---

[3] *Newdow* was cited as 2005 WL 2234110 in OSRAM's opening papers since it had not yet been published in the Reporter.

> the doctrine of issue preclusion inapplicable. … **Whether issue preclusion applies therefore depends in part on whether the controlling facts have changed significantly since the earlier judgment.**
>
> **A party may not assert a change in controlling facts when the facts allegedly showing a change in circumstances could have been discovered in the exercise of due diligence.**

*Id.* (emphasis added). Applying this rule here plainly precludes Citizen from re-litigating subject matter jurisdiction.

There has been no significant change in the controlling facts since the original dismissal. Citizen cites four events: OSRAM's filing suit in Germany, its meeting with Citizen's German distributor right after filing the suit, its press release about the suit, and its service of the complaint. The first three events occurred well before the original dismissal in July 2005. *See Citizen Electronics Co., Ltd. v. OSRAM GmbH and OSRAM Opto Semiconductors GmbH*, 377 F. Supp. 2d 149, 157 (D.D.C. July 14, 2005) (Docket #14 in Civil Action No. 1:05-cv-0112-ESH). They even occurred well before Citizen opposed OSRAM's original motion to dismiss in June 2005. (Docket #11 in Civil Action No. 1:05-cv-0112-ESH.) OSRAM filed its responsive suit in Germany in March 2005. (Am. Complaint ¶ 23, Exs. J, K.) OSRAM met with Citizen's German distributor in March 2005, "[n]early immediately after filing its German infringement action." Opp. at 6 (citing Gasser Decl. Ex. 1, a March 22, 2005 e-mail reporting the meeting). OSRAM issued its press release in Germany reporting the German suit on May 2, 2005. (Am. Complaint, Ex. T.) These are not events subsequent to the original dismissal, and Citizen admits that the final event, service of the German complaint in Japan, was already in progress at the time of the dismissal: "At the time of the dismissal, OSRAM was in the process of serving the German complaint through the Hague Convention upon CE, and OSRAM proceeded with completing such service on September 28, 2005." Opp. at 8. The completion of a service process that was

already underway is not the significant change in controlling facts that Citizen requires to avoid *res judicata*. *See* MOORE'S FEDERAL PRACTICE § 132.02[2][e] (3d ed.).

Citizen's Opposition is filled with language that betrays its inability to identify any genuine new occurrence. For example, since OSRAM filed its German suit before the original dismissal, Citizen is forced to rely on the fact that OSRAM "continued to prosecute" its lawsuit in Germany. Opp. at 4, 16. A continuation of an old event is not a new event. In addition, OSRAM's continued prosecution amounted to no more than allowing the process of serving the complaint, which had already been started by the appropriate authorities under the Hague Convention, to be completed.[4] *See id.* at 8. As another example, Citizen states OSRAM "never withdrew its German suit … nor did OSRAM ever retract its press release," but the fact that OSRAM did not undo events that had already transpired does not amount to new events. *Id.*

Consequently, since Citizen has failed to identify any significant new occurrence subsequent to the original dismissal that can cure the jurisdictional deficiency, Citizen is barred from re-litigating subject matter jurisdiction here. *See Dozier*, 702 F.2d at 1192, 1193 n.4; *Newdow*, 391 F. Supp. 2d at 99-100; 18 MOORE'S FEDERAL PRACTICE § 132.02[2][e] (3d ed.).

> **2.    Citizen invites this Court to rewrite the law on *res judicata* because Citizen does not believe it makes sense, but the law is sensible and Citizen cannot rewrite it to avoid the consequences of its own mistake**

Citizen's main argument against preclusion is that this Circuit's emphasized requirement that a jurisdictional deficiency must be cured by "*occurrences subsequent to the original dismissal*" does not make sense. *Dozier*, 702 F.2d at 1192 (original emphasis). Citizen states: "OSRAM claims that *Dozier* stands for the proposition that the 'curable defect' exception only

---

[4] OSRAM also had no time to consider whether it wished to "continue[] to prosecute" its German suit before Citizen sued OSRAM again. Opp. at 4, 16. The final dismissal of the original suit occurred on Friday, July 29, 2005, and Citizen filed this action on Tuesday, August 2, 2005. (Declaration of Charles H. Sanders in Support of OSRAM's Motion to Dismiss, Exs. 1, 2.)

applies to activities that took place after the original lawsuit is dismissed.  However, this does not

make sense under the standards of determining jurisdiction of a declaratory judgment action."

Opp. at 21.  Citizen argues that the plain language of *Dozier* cannot be followed based on a belief

that it would allow a patentee to terrorize a declaratory judgment plaintiff after the filing of a

declaratory judgment action, but before dismissal of that action, without risk of having this

conduct create jurisdiction:

> Under OSRAM's interpretation of *Dozier*, while a Court is determining whether
> or not it can hear a declaratory judgment action, the patentee could conduct itself
> in such a manner that would put the declaratory judgment plaintiff in reasonable
> apprehension of suit (such as file a patent lawsuit against them) but this activity
> could ***never*** be used as evidence to support a later second declaratory judgment
> action by that same plaintiff if the first declaratory judgment action is dismissed,
> and the patentee's conduct was not or could not have been used as evidence in the
> first declaratory judgment action.  Under OSRAM's absurd reading [of *Dozier*],
> patentees have a window of opportunity to terrorize alleged infringers without the
> patentee [*sic*] ever being taken into account.

*Id.* at 22-23 (original emphasis).  There is a reason that Citizen's "window of terror" argument

for avoiding preclusion is relegated to the final pages of its brief.  It is nonsense.

The law of *res judicata* set forth in *Dozier*, requiring "*occurrences subsequent to the*

*original dismissal*" to avoid preclusion, 702 F.2d at 1192 (original emphasis), does not in any

way create "a window of opportunity to terrorize alleged infringers."  Opp. at 23.  If a patentee

engages in aggressive conduct after the filing of a declaratory judgment suit (and while it is

pending), the solution is simple:  the plaintiff can file an amended complaint to use that

aggressive conduct as evidence that the suit should not be dismissed.[5]  Citizen states that the date

of filing of an amended complaint becomes the date as of which jurisdiction in a declaratory

judgment action must be determined.  *See* Opp. at 23 ("The date of filing of the amended

---

[5] And, if the aggressive conduct comes even later, after dismissal of the original action, then the
rule of *Dozier* plainly allows the declaratory judgment plaintiff to rely on that post-dismissal
conduct.

complaint becomes the controlling date of the filing of the declaratory judgment action."). Thus, by Citizen's own admission, a declaratory judgment plaintiff can simply file an amended complaint citing the new aggressive conduct and argue that it supports jurisdiction.

Citizen could have easily filed an amended complaint in its original suit to ensure this Court would consider the events it now cites, but Citizen failed to do so. All the facts Citizen cites here – OSRAM's filing its responsive suit in Germany in March 2005, meeting with Citizen's German distributor in March 2005, its press release about its German suit on May 2, 2005, and service of the German complaint (which was in progress) – easily could have been included in an amended complaint when Citizen opposed OSRAM's original motion to dismiss in June 2005. (Docket #11 in Civil Action No. 1:05-cv-0112-ESH.) OSRAM gave Citizen over a month to oppose its original April 27, 2005 motion to dismiss (Docket #7 in Civil Action No. 1:05-cv-0112-ESH), and all the events now cited by Citizen occurred by early May 2005, a month before it had to file its opposition. Citizen does not contend that it was unaware of these events or tha, if it was not actually aware of them, that it could not have become aware of them through reasonable diligence. *See* 18 MOORE'S FEDERAL PRACTICE § 132.02[2][e] (3d ed.) ("A party may not assert a change in controlling facts when the facts allegedly showing a change in circumstances could have been discovered in the exercise of due diligence."). Simply put, Citizen had plenty of time to decide whether to file an amended complaint and elected not to do so.

Citizen states here that it is entitled to file an amended complaint as of right because OSRAM's motion to dismiss is not considered a "responsive pleading," and Citizen has filed one in this second suit. *See* Opp. at 9 n.2. Citizen plainly could have done this in the original suit. The very case that Citizen cites for its right to file an amended complaint, *Confederate Memorial*

*Ass'n v. Hines*, 995 F.2d 295 (D.C. Cir. 1993), reinforces that Citizen should have filed one in

the original suit and that it must bear the consequences of its failure. The D.C. Circuit affirmed

dismissal of that case because the plaintiff failed to file an amended complaint, even though the

plaintiff had the right to do so. *See id.* at 299.

Rather than file an amended complaint in its original suit, Citizen elected to rely on its

original complaint and allowed the case to go to judgment. This Court's judgment dismissing

that case has *res judicata* effect on the jurisdictional issue. Citizen is precluded from using this

second suit to re-litigate the issue based on facts it could have easily raised in an amended

complaint in the first suit. This Court should apply the clear requirement that a plaintiff must

show "*occurrences subsequent to the original dismissal*" to cure a jurisdictional defect. *Dozier*,

702 F.2d at 1192 (original emphasis); *see also id.* at 1193 n.4 ("proper application of *res judicata*

should require some demonstration that the plaintiff is relying upon a new fact or occurrence,

and not merely relying upon those that existed at the time of the first dismissal"); 18 MOORE'S

FEDERAL PRACTICE § 132.02[2][e] (3d ed.) ("A party may not assert a change in controlling facts

when the facts allegedly showing a change in circumstances could have been discovered in the

exercise of due diligence.").

Citizen's invitation to re-write *Dozier*'s clear rule that a plaintiff must identify

"*occurrences subsequent to the original dismissal*," 702 F.2d at 1192 (original emphasis), into a

rule that merely requires occurrences that were not "<u>available at the time the case was filed,</u>"

Opp. at 22 (Citizen's emphasis), should be rejected. There is no basis to re-write the D.C.

Circuit's emphasized requirement. Citizen points out that, in the cases cited in *Dozier*, the

jurisdictional deficiencies were curable by events after the original dismissals, *see* Opp. at 22,

but this is entirely consistent with *Dozier*'s requirement of "*occurrences subsequent to the*

*original dismissal.*" 702 F.2d at 1192 (original emphasis).  In addition, this requirement

naturally means that a plaintiff cannot re-litigate jurisdiction in a second suit where it was aware

of facts that might have cured the jurisdictional deficiency at the time it filed the original suit but

failed to allege them.  *See* Opp. at 22.  However, this does not mean that the D.C. Circuit's

emphasized requirement of "*occurrences subsequent to the original dismissal*," 702 F.2d at

1192, must be re-written to a more limited requirement of occurrences that were not "available at

the time the case was filed." Opp. at 22 (Citizen's emphasis).  This District recently quoted and

applied *Dozier* without any suggestion that its plain language should be further limited.  *See*

*Newdow*, 391 F. Supp. 2d at 99-100 ("For this [curable defect] exception to apply, the

jurisdictional deficiency from the prior litigation must be 'remedied by *occurrences subsequent*

*to the original dismissal.*'") (quoting *Dozier* with original emphasis).

    In sum, Citizen could have filed an amended complaint to address facts that became

available during its original suit but, having elected not to do so, Citizen is barred by *res judicata*

from trying to litigate those facts now.  *Dozier*, 702 F.2d at 1192, 1193 n.4 ("proper application

of *res judicata* should require some demonstration that the plaintiff is relying upon a new fact or

occurrence, and not merely relying upon those that existed at the time of the first dismissal").

## B.    There Has Been No Substantive Change That Would Support Finding Jurisdiction Now

    Nothing substantive has changed that would support jurisdiction, forcing Citizen to resort

to outdated law, tortured logic, and misstatements of the record to try to meet its burden.  *See*

*Citizen*, 377 F. Supp. 2d at 152 ("When opposing a Rule 12(b)(1) motion, plaintiff has the

burden of persuasion to establish by a preponderance of the evidence the existence of subject

matter jurisdiction.").  Citizen primarily relies on OSRAM's filing its responsive suit in

Germany to contend that it now has a reasonable apprehension of suit here, in the United States,

on OSRAM's U.S. patents. Citizen relies on outdated law in incorrectly arguing that OSRAM's German suit automatically gives it a reasonable apprehension of suit in the U.S. on OSRAM's U.S. patents. Citizen also engages in tortured logic in arguing that this foreign suit presents a stronger basis for jurisdiction than counterclaims for infringement in the U.S., which Citizen admits do not support jurisdiction. In addition, Citizen misstates the content of OSRAM's press release reporting the German suit, trying to covert it into a statement of intent to sue Citizen in the future.

     **1.    Citizen's contention that OSRAM's responsive German suit creates jurisdiction is based on outdated law and tortured logic**

In *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988), the Federal Circuit made clear that the test for a reasonable apprehension of suit in patent cases involves ascertaining whether the patentee made an express charge of infringement and, if not, then courts must consider the totality of the circumstances. *See id.* at 736; *see also Citizen*, 377 F. Supp. 2d at 153. Relying on *Ethicon, Inc. v. Am. Cyanamid Co.*, 369 F. Supp. 934 (D.N.J. 1973), Citizen argues that a foreign suit on foreign counterpart patents constitutes an express charge of infringement under *Arrowhead*. *See* Opp. at 11 ("The filing of a patent lawsuit in a foreign country against a company related to the declaratory judgment plaintiff based on foreign patents that are equivalent to U.S. patent counterparts creates a reasonable apprehension of imminent suit in this country.") (citing *Ethicon*). Under this view, an infringement suit anywhere in the world automatically provides declaratory judgment jurisdiction in the U.S. Citizen therefore contends that OSRAM's German suit automatically gives it a reasonable apprehension of suit and that this Court need look no further. *See* Opp. at 14 ("there is no doubt that there is 'an express threat of litigation' – OSRAM filed a patent infringement suit in Germany on

equivalent patents"); *id.* at 17, 23.[6]  To support this contention, Citizen cites *Arrowhead*, 864

F.2d at 736, which has nothing to do with foreign suits, and *Ethicon*, 369 F. Supp. at 937.

Citizen's reliance on *Ethicon* to contend that OSRAM's German suit automatically

provides a reasonable apprehension of suit in the U.S. on OSRAM's U.S. patents, and that the

totality of the circumstances should not be considered, is unsupportable.  *Ethicon* is a 1973

District of New Jersey case that came before the creation of the Federal Circuit in 1982 (and

before its *Arrowhead* decision in 1988) and is not followed in the District of New Jersey or in the

District of Columbia.  The courts have realized that an infringement suit anywhere in the world

does not automatically provide jurisdiction in the U.S. and that a fact-specific, case-by-case

determination is required.

The District of New Jersey recently recognized that foreign litigation is not dispositive

and that a fact-specific inquiry is needed:

> As to the Italian litigation, courts have come out differently on whether suit or
> threat of suit in a foreign forum on a corresponding foreign patent is sufficient to
> satisfy the reasonable apprehension requirement.  **The inquiry is fact specific.**
> The Court adopts the view that while **foreign litigation is not dispositive of a
> reasonable apprehension of suit in the United States**, it is nonetheless a factor
> to be weighed in the analysis.

*Zambon*, 2005 WL 1262938 at *4 (emphasis added and citation omitted).  In *Zambon*, the Court

noted that "the Italian litigation involving Warner-Lambert and Zambon does not necessarily

signal an infringement suit against Zambon in the United States." *Id.* at *4.  The *Zambon* court

found no jurisdiction, and, in the alternative, decided that it would decline to exercise

jurisdiction.  *See id.* at *5.

---

[6] Citizen quotes *Arrowhead* for the catch phrase in its brief "an express threat of litigation,"
which it argues is automatically met by foreign litigation.  Opp. at 14.  However, this phrase does
not appear anywhere in *Arrowhead*.

Similarly, the District of Columbia has concluded that foreign litigation is only one factor in the analysis, and must be evaluated "on a case-by-case basis," in finding that foreign litigation did not give rise to declaratory judgment jurisdiction. *See Studex*, 355 F. Supp. 2d at 8-9. The Court explained, "Given the lack of definitive Federal Circuit precedent on the issue, this Court agrees … that 'foreign litigation, while not dispositive of a reasonable apprehension of suit in the United States, is one factor to be considered in the analysis.'" *Id.* at 9 n.10. Finding no actual controversy, the Court explained that "in essence, the evidence offered by [the declaratory judgment plaintiff] Studex shows only [the patentee] Blomdahl's willingness and intention of protecting its European patent rights in Sweden, rather than its intention of initiating litigation in the U.S." *Id.* at 9.

Based on cases such as *Zambon* and *Studex*, this Court should reject Citizen's argument that OSRAM's German suit automatically gives Citizen a reasonable apprehension of suit in the U.S. on OSRAM's U.S. patents. As in those cases, this Court should consider the totality of the circumstances and similarly find no reasonable apprehension of suit. The facts here resemble those in *Zambon* and *Studex* because OSRAM's German suit shows only its intention to enforce its German patents, rather than any intention to initiate litigation in the U.S. *See Zambon*, 2005 WL 1262938 at *4; *Studex*, 355 F. Supp. 2d at 9. Despite Citizen's suing OSRAM twice in the U.S., OSRAM has shown no intention to sue Citizen in the U.S. and wrote Citizen that it should stop trying to create a U.S. legal issue. (Ex 1.) In addition, there is a very significant additional fact weighing against jurisdiction here that was not present in *Zambon* or *Studex*: Citizen provoked OSRAM's German suit by first suing OSRAM in the U.S. In *Studex*, the patentee's European suit came first and the Court had to guess whether a U.S. suit would come next. *See id.* at 5 (the patentee's European suit was filed in July 2001 and the declaratory judgment was

13

filed in February 2002).[7]  By contrast, here it is clear that OSRAM's measured response to being

sued by Citizen in the U.S. was to sue in Germany and ***not*** in the U.S.

Citizen has no valid response to the fact that it provoked litigation with OSRAM in the

first place.  Citizen characterizes OSRAM's German suit as "independent offensive action

against CE unrelated to its actions in the first declaratory judgment action."  Opp. at 15.  It tests

the bounds of reason to believe that OSRAM's responsive German suit is truly "unrelated" to

Citizen's first filing suit.  Regardless, Citizen acknowledges that a declaratory judgment suit

often provokes a patentee to file infringement counterclaims, which Citizen admits do not supply

jurisdiction.  *See id.* (citing *Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 662 F. Supp. 603,

617-20 (D. Del. 1987), which dismissed an infringement counterclaim along with the declaratory

judgment suit after finding no jurisdiction).  Citizen then perversely reasons that OSRAM's

responsive German suit, which is clearly ***less*** related to the U.S. than counterclaims for

infringement of U.S. patents, gives rise to a ***stronger*** basis for a reasonable apprehension of suit.

*See* Opp. at 15.

Contrary to Citizen's tortured logic, since Citizen admits that provoked counterclaims in

the U.S. for infringement of U.S. patents do not support jurisdiction in the U.S., a provoked

foreign suit for infringement of foreign patents surely does not support jurisdiction in the U.S.

Citizen has the burden to prove that there is jurisdiction and, since a countersuit in the U.S. does

not support jurisdiction, Citizen cannot satisfy its burden by pointing to OSRAM's responsive

suit in Germany, which is plainly a weaker basis for asserting jurisdiction.  *See Citizen*, 377 F.

Supp. 2d at 152.

---

[7] It also appears that the patentee's European suit came before the declaratory judgment suit in
the U.S. in *Zambon*, but the dates are not specifically noted.  *See* 2005 WL 1262938 at *2-4.

      **2.**     **Citizen misstates the content of OSRAM's press release reporting its responsive German suit to try to create a statement of intention to sue Citizen in the future**

OSRAM's press release on May 2, 2005 in Regensburg, Germany reports OSRAM's responsive suit against Citizen in Germany:

> Based on its conviction that Citizen is infringing fundamental patent rights, Osram Opto Semiconductors has filed action against the Japanese LED manufacturer Citizen Electronics Co., LTD. at Dusseldorf Regional Court.  With this move, Osram intends to enforce its patents for the manufacture of Light Emitting Diodes (LEDs).

> In its suit, *OSRAM stresses that Citizen has infringed and is still infringing its patents by importing, selling and offering certain white Light Emitting Diodes (LED) in Germany*.  …  Action was similarly taken against a distributor, which has since declared that it will refrain from distributing Citizen products which infringe Osram's patents in future.

Opp. at 3 (quoting Am. Complaint, Ex. T) (Citizen's emphasis).  This press release concludes with OSRAM Opto Semiconductors' CEO explaining OSRAM's objective in taking this action against Citizen is to prevent authorized use of its technology:

> "*Our objective in taking legal action against Citizen and issuing warnings to Dominant is to prevent unauthorised use of our technology*," stated Dr. Rüdiger Müller, CEO of Osram Opto Semiconductors.  "We have a considerable number of patents which were acquired over the course of many years of intensive research and development work," explained Müller.

(Am. Complaint, Ex. T) (emphasis added).  This press release plainly reports OSRAM's suit against Citizen in Germany and explains the objective of that suit.  It does not threaten Citizen with further litigation.

However, Citizen misstates OSRAM's press release to try to create a statement of intention to sue Citizen in the future:  "OSRAM's CEO further confirmed that OSRAM has every intention 'to take legal action against Citizen … to prevent unauthorized use of our technology."  Opp. at 17 (ostensibly quoting Am. Complaint, Ex. T) *see also id.* at 7, 21.  OSRAM's CEO did *not* state that OSRAM had any "intention '*to take legal action against*

*Citizen*,'" as Citizen misquotes him.  *Id.* at 17 (emphasis added).  To the contrary, he explained OSRAM's "***objective in taking legal action against Citizen***" in Germany.  (Am. Complaint, Ex. T (emphasis added).)  Thus, Citizen has not only taken liberties with the law but also has taken liberties with the evidence in trying to fabricate a basis for jurisdiction.

OSRAM's press release just reported OSRAM's German infringement, and, contrary to Citizen's contention, did not contain any threat of further litigation against Citizen.  Citizen quotes the press release at length three times, *see* Opp. at 3, 7, 17, but repetition cannot alter the fact that the press release simply reports OSRAM's infringement suit "***in Germany***," as Citizen emphasizes the first time it quotes it.  *Id.* at 3.  Moreover, the Federal Circuit recognizes that a patentee's talking up its patent rights after being provoked by a potential infringer is precisely the sort of response that one would expect and does not give rise to jurisdiction.  *See, e.g., Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888-89 (Fed. Cir. 1992) (affirming dismissal).  Citizen's claim that OSRAM's press release "is precisely the sort of Damoclean threat that a declaratory judgment action is meant to address" is bogus.[8]  Opp. at 18.  A Damoclean threat refers to an analogy to Greek mythology where a sword hangs by a thread above an innocent man's head, presenting an imminent threat.  It is distasteful that Citizen tries to analogize itself to an innocent party under threat after striking first against OSRAM and then misquoting OSRAM's press release to try to fabricate a threat which OSRAM never made.

---

[8] In building up its purported "Damoclean threat," Citizen states that "the controversy has already caused one of CE's distributors to discontinue CE's white light LED products."  Opp. at 18.  This was the German distributor that settled out of OSRAM's German suit (as stated in the press release), which Citizen admits at the start of its brief.  *See id.* at 3.  This does not support a reasonable apprehension of imminent suit in the U.S. on OSRAM's U.S. patents, which Citizen must prove here.

**C.    Even Assuming *Arguendo* That There Could Be Jurisdiction Here, This Court Should Decline To Exercise Jurisdiction To Further The Purpose Of The Declaratory Judgment Act And Sound Judicial Administration**

For the reasons explained above, there is no jurisdiction here, but, even assuming *arguendo* that there could be jurisdiction, this Court should decline to exercise jurisdiction.  This Court has very wide latitude to decide whether to accept jurisdiction over Citizen's declaratory judgment action.  *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) ("The Supreme Court recently reaffirmed that the Declaratory Judgment Act thereby accords district courts a 'unique breadth of ... discretion to decline to enter a declaratory judgment.'") (affirming a district court's decision not to exercise jurisdiction) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).  The Federal Circuit explained that "as long as [a] district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, the court has broad discretion to refuse to entertain a declaratory judgment." *EMC*, 89 F.3d at 813-14.  Declining to exercise jurisdiction here will further the purposes of the Act and principles of sound judicial administration.

The central objective of the Declaratory Judgment Act is to allow truly threatened parties to adjudicate their dispute.  *See EMC*, 89 F.3d at 814-15.  In *EMC*, the Federal Circuit affirmed the district court's decision to decline to exercise jurisdiction because, in the district court's view, exercising jurisdiction "would 'creat[e] an incentive structure that is inconsistent with the public interest in preserving declaratory proceedings for cases closer to the central objectives of declaratory proceedings.'"  *Id.* at 814.  The district court was concerned that accepting jurisdiction would allow other parties in the declaratory judgment plaintiff's position to "abuse the declaratory judgment device." *Id.*  These same concerns apply here.  If this Court were to accept jurisdiction, it would encourage other potential infringers to file declaratory judgment actions against patentees, even when they have no basis for jurisdiction, in hope of provoking

17

responses that they could use to support jurisdiction. This is an "abuse [of] the declaratory judgment device" because the Act is designed to protect truly threatened parties, not parties who strike first and then solicit the courts protection after provoking a reaction. *Id.*

The present case exemplifies this abuse and demonstrates that it is a real concern. It has been established that Citizen filed suit against OSRAM when it was not being threatened and had no basis for jurisdiction in the United States. *See Citizen*, 377 F. Supp. 2d at 156-57. OSRAM did not respond to Citizen's provocation in the United States at all and only responded in Germany. Now, Citizen seeks to use this response in a foreign country to supply the basis for jurisdiction in the United States that it was lacking in the first place. This circular logic turns the Act on its head. It converts the Act from a shelter against real threats into an offensive weapon for dragging patentees who were not threatening in the first place into court in the United States. If this practice is approved, this weapon will no doubt find a home in the litigator's toolbox.

Furthermore, declining jurisdiction here would further "principles of sound judicial administration." *EMC*, 89 F.3d at 813-14. If baseless declaratory judgment suits can be used to provoke jurisdiction, the courts will undoubtedly see many more baseless declaratory judgment suits. This undermines "sound judicial administration." *Id.* It will also encourage more U.S. patent litigation because patentees will feel that they must respond to baseless declaratory judgment suits with infringement claims in the United States because any other reaction (*e.g.*, responding only abroad) might lead to jurisdiction in the declaratory judgment plaintiff's chosen forum. Thus, patentees who were not threatening and did not want to litigate their patents would be reluctantly drawn into unnecessary litigation. Encouraging unnecessary litigation does not comport with "principles of sound judicial administration." *Id.*

18

While Citizen quibbles with OSRAM's description of the settlement discussions, Citizen does not address OSRAM's arguments in favor of declining jurisdiction based on the policy implications of accepting jurisdiction here. *See* Opp. at 18-20. Citizen has no valid response. Its conduct in originally filing a baseless declaratory judgment suit and trying to use the response it provoked in Germany to support jurisdiction in this second suit is precisely the kind of conduct that should not be encouraged by accepting jurisdiction. This conduct "is inconsistent with the public interest in preserving declaratory proceedings for cases closer to the central objectives of declaratory proceedings" and accepting jurisdiction would invite parties to "abuse the declaratory judgment device." *EMC*, 89 F.3d at 814. Just as the district court declined to exercise jurisdiction for these reasons in *EMC*, this Court should decline to exercise jurisdiction here (assuming it even could exist).

III.    **CONCLUSION**

For the foregoing reasons and those set forth in OSRAM's opening brief, OSRAM

respectfully requests that the Court dismiss this case.

Dated:  November 22, 2005                         FISH & RICHARDSON P.C.


                                        By:    _/s/ Christian A. Chu_
                                               Christian A. Chu (DC Bar No. 483948)
                                               1425 K Street, N.W.
                                               Suite 1100
                                               Washington, D.C. 20005

                                               Alan D. Smith (admitted _pro hac vice_)
                                               Charles H. Sanders (admitted _pro hac vice_)
                                               Fish & Richardson P.C.
                                               225 Franklin St.
                                               Boston, MA 02110
                                               (617) 542-5070

                                               Attorneys for Defendants
                                               **OSRAM GmbH AND OSRAM OPTO
                                               SEMICONDUCTORS GmbH**

21212810.doc