**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **CITIZEN ELECTRONICS COMPANY, LTD.,** | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 05-1560 (ESH) |
| **OSRAM GMBH and OSRAM OPTO SEMICONDUCTORS GMBH,** | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

In this case plaintiff Citizen Electronics Company, Ltd. ("Citizen") requests a judgment declaring that patents issued or assigned to defendants Osram GMBH and Osram Opto Semiconductors GMBH (collectively "OSRAM") are either invalid or not infringed by Citizen's white light emitting diodes ("LEDs"). This Court dismissed a prior complaint by Citizen, filed on January 18, 2005, for lack of subject matter jurisdiction, holding that plaintiff failed to carry its burden of demonstrating that it had a reasonable apprehension of suit as of the time it filed its complaint, as required under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *Citizen Electronics Co., Ltd. v. Osram GMBH*, 377 F. Supp. 2d 149, 157 (D.D.C. 2005) ("*Citizen I*"). Within weeks of the Court's dismissal of *Citizen I* on July 14, 2005,[1] Citizen initiated this second suit seeking the same relief but relying on events subsequent to January 18, 2005, in an

---

[1] By Order dated July 29, 2005, the Court corrected its prior Order to provide that the dismissal was without prejudice.

attempt to establish subject matter jurisdiction. Because Citizen's attempt to relitigate the question of subject matter jurisdiction is foreclosed by the Court's previous judgment, the Court grants OSRAM's Motion to Dismiss.

## BACKGROUND

The facts relating to the OSRAM patents and the interaction between the parties regarding these patents prior to the time of filing the initial suit on January 18, 2005, are set forth in *Citizen I* and need not be repeated here. *See Citizen I*, 377 F. Supp. 2d at 151-52. Since the Court found those facts to be insufficient to permit plaintiff to carry its burden of proving subject matter jurisdiction, plaintiff has now attempted to cure this defect by relying on facts that post-date the filing of its first suit. In particular, in its complaint in this case, filed on August 2, 2005, plaintiff relied on two events to support its claim of jurisdiction: OSRAM's March 14, 2005 filing of a German enforcement action alleging that Citizen's white LEDs infringed the European counterparts to the patents at issue here, and OSRAM's May 2, 2005 press release announcing the German lawsuit and stating that the action was "intend[ed] to enforce [OSRAM's] patents for the manufacture of Light Emitting Diodes . . . [which] Citizen has infringed and is still infringing." Compl. ¶ 23. Subsequent to filing suit on August 2, plaintiff filed an amended complaint on November 11, 2005, adding two other facts in support of its claim of subject matter jurisdiction: the decision of Citizen's German distributor to end its distribution of Citizen's white LEDs after meeting with OSRAM in the wake of the March 14 filing, and OSRAM's service of the German complaint on plaintiff on September 28, 2005. Amend. Compl. ¶¶ 27, 32.

OSRAM now moves to dismiss Citizen's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Relying on the D.C. Circuit's opinion in *Dozier v. Ford*

*Motor Co.*, 702 F.2d 1189 (D.C. Cir. 1983), OSRAM contends that the "jurisdictional deficiency" identified in the Court's first opinion has not been "remedied by occurrences subsequent to the original dismissal," and thus, the doctrine of *res judicata* forecloses Citizen's renewed attempt to establish jurisdiction here.  (Mot. to Dismiss at 10-11.)  OSRAM further argues that its filing of the German suit was provoked by Citizen's first request for a declaratory judgment and should therefore not be considered in determining whether Citizen reasonably apprehended being sued.  In the alternative, defendant asks that the Court decline to entertain Citizen's request for a declaratory judgment in an exercise of its discretion under the Declaratory Judgment Act.  (*Id.* at 11-14.)

## LEGAL ANALYSIS

Given the unique factual background presented here, this case presents the novel issue of whether jurisdictional facts that occurred after plaintiff filed its first suit but prior to the Court's dismissal of that suit may be relied on in a second suit to cure the jurisdictional defect.  In addressing that issue, certain facts and legal principles appear to be agreed to by the parties.  First, in *Citizen I*, plaintiff never attempted to amend or supplement its complaint to allege the facts that occurred after it filed suit on January 18, 2005, but prior to the Court's dismissal.  Though both parties referenced the German suit in their pleadings, this Court did not consider the filing of the German suit in reaching its decision since it determined that "[r]easonable apprehension must exist at the time suit was filed."  377 F. Supp. 2d at 152 n.2, 155 n.7.[2]

---

[2] While the decision by plaintiff's German distributor to end its distribution of plaintiff's product and the May 2, 2005 press release by defendant preceded this Court's decision in *Citizen I* by over two months, these facts were not brought to the Court's attention during the course of that proceeding.

Second, it is agreed that under the doctrine of *res judicata*, a judgment ordering dismissal for lack of subject matter jurisdiction precludes relitigation of the same jurisdictional issue in a later suit. *See GAF Corp. v. United States*, 818 F.2d 901, 912-13 (D.C. Cir. 1987) ("[A] judgment ordering dismissal, will . . . have preclusive effect as to matters actually adjudicated; it will, for example, preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal."); *Dozier*, 702 F.2d at 1191 ("[T]he doctrine of *res judicata* applies to dismissal for lack of jurisdiction as well as for other grounds . . . ."). Moreover, both parties acknowledge that the Court is bound by this Circuit's law in resolving the application of *res judicata* here. *See, e.g.*, *Epic Metals Corp. v. H.H. Robertson Co.,* 870 F.2d 1574, 1576 (Fed. Cir. 1989) ("In applying the doctrine of res judicata in this case, we must look to Third Circuit law. . . ."); *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1471 n.1 (Fed. Cir. 1989) ("The application of principles of res judicata and collateral estoppel is not a matter committed to the exclusive jurisdiction of this court.") (applying Ninth Circuit law). And finally, the parties recognize an exception to the *res judicata* effect of jurisdictional dismissals called the "curable defect" exception. *See GAF*, 818 F.2d at 912-13; *Dozier*, 702 F.2d at 1192. It is, however, the application of this exception to the facts at hand that causes a dispute between the parties and poses a challenging issue for the Court.

      While it appears that no case has actually considered this doctrine in the context of a case where a plaintiff could have raised additional jurisdictional facts by amending or supplementing the complaint but nonetheless failed to do so, Justice Scalia's opinion in *Dozier* provides persuasive guidance for resolving this issue. In *Dozier*, the Court observed that "[w]hat all [prior 'curable defect'] cases have in common is that the jurisdictional deficiency could be remedied by

*occurrences subsequent to the original dismissal.*" 702 F.2d at 1192 (emphasis in original). *See also GAF*, 818 F.2d at 912-13 ("A claim of jurisdiction is not precluded if . . . in the interim *subsequent to the initial dismissal* there are developments tending to 'cure' the jurisdictional deficiency identified in the first suit. This so-called 'curable defect' exception applies where a 'precondition requisite' to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit.") (internal quotations omitted) (emphasis added); *Newdow v. Bush*, 391 F. Supp. 2d 95, 99-100 (D.D.C. 2005) (quoting *Dozier*). This rule announced in *Dozier* is also consistent with the teaching of *Moore's Federal Practice*, which states:

> The basic rule, that issue preclusion applies only if the issue in the prior litigation is identical to the issue in the subsequent litigation, entails the corollary that a difference in pertinent facts, sufficient to substantially change the issue, renders the doctrine of issue preclusion inapplicable . . . . *Whether issue preclusion applies therefore depends in part on whether the controlling facts have changed significantly since the earlier judgment.*

18 J. Moore, *et al.*, *Moore's Federal Practice*, § 132.02[2][e], at 27-8 (3d ed. 2005)  (emphasis added).

While plaintiff cites this very passage from *Moore's* (*see* Pl.'s Opp'n at 13), it nonetheless argues that issue preclusion does not apply in this case because the events that post-dated the filing of the first action were "irrelevant to [the Court's] analysis" and therefore were "not included in the Court's determination of jurisdiction." (*Id*. at 20.) Thus, in plaintiff's view, the determinative moment is the date the original action is filed. (*See id.* at 22.) Following this approach, plaintiff contends that the significant events (*i.e.*, the filing of the German lawsuit, the May 2, 2005 press release and the decision of Citizen's German distributor to cease distribution of plaintiff's white LEDs), all of which post-dated the filing of the first suit but predated the

Court's dismissal in July 2005, constitute a change in controlling facts, and therefore, they can be used to cure the jurisdictional deficiency found in *Citizen I*. (*See id.* at 13, 20-1.)

Plaintiff's approach, however, is contrary to *Dozier*'s explicit language, as well as the purposes underlying the doctrine of *res judicata*. First, *Dozier* could not be clearer -- a plaintiff cannot relitigate a jurisdictional dismissal by "relying upon those [facts] that existed at the time of the first dismissal." *Dozier*, 702 F.2d at 1192 n.4; *see also id.* at 1192 ("the jurisdictional deficiency could be remedied by *occurrences subsequent to the original dismissal*") (emphasis in original); *GAF*, 818 F.2d at 913 n.74 (quoting the same language from *Dozier*). Thus, plaintiff is simply incorrect when it interprets *Dozier* as "stand[ing] for the proposition that plaintiffs cannot relitigate a jurisdictional dismissal by only alleging the same facts in a subsequent action or facts that *were available at the time the case was filed* . . ." (Pl.'s Opp'n at 22) (emphasis in original), since under *Dozier* the determinative time is the date of the dismissal.

Plaintiff is also misguided when it argues that even if the jurisdictional fact was in existence at the time of the dismissal, it can still be used to cure a jurisdictional defect if it was not actually raised and decided in the prior litigation. (*See id.* at 13, 22.) *Dozier* certainly contains no such requirement, and if anything, such an interpretation flies in the face of *Dozier*'s underpinnings. As made clear by Justice Scalia, the rule adopted in *Dozier* did not permit "newly discovered injury" to cure a jurisdictional dismissal because such a rule would permit "frequent and unavoidable impairment of the finality of jurisdictional dismissals." 702 F.2d at 1192 n.5.[3/] Applying this rationale here, the Court concludes that facts existing prior to the entry of its

---

[3/] As further explained in *Dozier*, a showing of a "post-dismissal change in the underlying facts" is consistent with the Court's "estimation of the appropriate trade-off between the prevention of harassing litigation and ease of judicial application." 702 F.2d at 1193 n.7.

judgment that could have been considered had plaintiff elected to raise them by amending its complaint, cannot now be considered without frustrating the finality of jurisdictional dismissals. While plaintiff admits that the date of filing an amended complaint "becomes the controlling date of the filing of the declaratory judgment action" (Pl.'s Opp'n at 23 (citing *Millipore Corp. v. University Patents, Inc.*, 682 F.Supp. 227, 233 (D. Del. 1987))), it did not amend here, but instead waited until after this Court entered judgment to raise these facts despite the universal rule, cited in *Dozier*, that leave to amend pleadings is to be liberally granted. *Dozier*, 702 F.2d at 1192-93, 1193 n.6. By having opted to follow this route, plaintiff's conduct is akin to that of the plaintiff in *Dozier* and, consistent with the result in *Dozier*, it should not be permitted to rely on facts that existed prior to the dismissal to cure a jurisdictional defect if the "doctrine of *res judicata* is to achieve its intended purposes." *Id*. at 1193.[4/]

Consistent with *Dozier*, its progeny and the goal of ensuring the finality of jurisdictional dismissals, the Court therefore rejects Citizen's attempt to rely on those facts that were in existence more than two months prior to the issuance of *Citizen I*. Plaintiff is thus left with the service of process of the German suit on September 28, 2005, which is the only event that "occurrence[] subsequent to the original dismissal." *Dozier*, 702 F.2d at 1192 (emphasis

---

[4/] *Moore's Federal Practice* also supports this conclusion, since it recognizes that issue preclusion can be applied even if relevant evidence was not actually raised and litigated in the prior suit. *See id.* § 132.02[2][d], at 25-7 ("A party may be precluded from relitigating an issue if evidence supporting the party's position on the issue could have been submitted in previous[] litigation but, for whatever reason, was not properly raised. Evidence that is not the result of a different factual situation or changed circumstances, but is instead historical in nature and could have been admitted at the first trial if properly submitted, cannot be introduced in subsequent litigation of the same issue."); *cf. id*. § 132.03[2][e], at 27-9 ("A party may not assert a change in controlling facts when the facts allegedly showing a change in circumstances could have been discovered in the exercise of due diligence.")

removed). The Court finds that this event is insufficient to cure the jurisdictional defect, since it is undisputed that Citizen knew of the existence of the German suit over a month before defendants filed their motion to dismiss in *Citizen I* and over six months prior to the date that service of process was effectuated. In effect, service of process added very little, if anything, to the facts in existence at the time of the dismissal in *Citizen I*. Therefore, this action falls outside *Dozier*'s "curable defect" exception, and plaintiff is foreclosed by the doctrine of *res judicata* from relitigating the issue of subject matter jurisdiction.

## II.     Discretion Under the Declaratory Judgment Act

Though the Court's determination regarding the *res judicata* effect of its first jurisdictional dismissal is sufficient to resolve defendants' motion, an alternate basis for dismissal presents itself under the present facts -- the Court's broad statutory discretion to withhold declaratory relief. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Thus, as stated by the Supreme Court, the statute affords courts a "unique breadth of . . . discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at 288; *see also id.* at 286-87 ("The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface."); *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

Applying these principles, the Court concludes that hearing Citizen's present declaratory judgment action would be inconsistent with "considerations of practicality and wise judicial administration." *Id.* at 288. When notified of OSRAM's German enforcement action during the pendency of the prior case, Citizen made no attempt to amend or supplement its pleadings. Rather, plaintiff sat idle while briefing proceeded on a stale question -- whether it reasonably apprehended suit on January 18, 2005. After the Court published a Memorandum Opinion answering this question in the negative, plaintiff immediately filed a second complaint raising the same issue and offering the German suit and other facts that were in existence well before the date of the dismissal as the primary evidence to support a finding of subject matter jurisdiction. The substantial inefficiencies inherent in this approach should be discouraged so as to avoid the unnecessary waste of judicial resources. *See Hanes Corp. v. Millard*, 531 F.2d 585, 591-92 (D.C. Cir. 1976) (courts' discretion under the Declaratory Judgment Act "is to be 'exercised in the public interest' and in such a way as 'to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief'") (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)).  For this reason, even if Citizen's present suit were not foreclosed by

the *res judicata* effect of the prior jurisdictional dismissal, the Court would exercise its discretion under the Declaratory Judgment Act to deny the requested relief.

## CONCLUSION

For these reasons, the defendants' Motion to Dismiss for Lack of Jurisdiction [#9] is **GRANTED** and the above-captioned complaint is **DISMISSED WITHOUT PREJUDICE.**

                                    s/
                              ELLEN SEGAL HUVELLE
                              United States District Judge

Date:  December 20, 2005